GENERAL PUBLIC LOAN CORPORATION, PLAINTIFF-AP-
PELLANT, v. DIRECTOR OF THE DIVISION OF TAXA-
TION, DEFENDANT-RESPONDENT.

Argued October 5, 1953—Decided October 26, 1953.

396

*Mr. Marlin J. Kole* argued the cause for the appellant.

*Mr. Joseph A. Murphy,* Assistant Deputy Attorney-General, argued the cause for the respondent (*Mr. Theodore D. Parsons,* Attorney-General of New Jersey, attorney; *Mr. Benjamin M. Taub,* Deputy Attorney-General, of counsel).

The opinion of the court was delivered by

BURLING, J. General Public Loan Corporation, a New York corporation engaged in the small loan business in New

Jersey (hereinafter referred to as General), appeals from a judgment of the Division of Tax Appeals, in the Department of the Treasury, State of New Jersey, dated February 10, 1953, which affirmed an assessment levied against General by the Director of the Division of Taxation under the Financial Business Tax Law (1946), *L.* 1946, *c.* 174 (*N. J. S. A.* 54:10B–1 *et seq.*). The appeal was addressed to the Superior Court, Appellate Division. Prior to hearing there certification was allowed by the Supreme Court on our own motion.

The Financial Business Tax Law (1946) was entitled "An act to impose an excise tax upon certain financial businesses." Included among the businesses subjected to its terms are industrial banks, dealers in commercial paper and acceptances, sales finance, personal finance, small loan and mortgage financing businesses. *L.* 1946, *c.* 174, *sec.* 2(*b*) (now incorporated in *N. J. S. A.* 54:10B–2(*b*), it being noted that this section has been amended in other respects by *L.* 1951, *c.* 131, *sec.* 1, effective May 31, 1951 after the tax year involved in this appeal, namely 1947). General admittedly is within this category. The appeal involves directly the construction and application of that clause of the act which relates to the determination of the factors upon which the quantum of the tax is calculated, namely *L.* 1946, *c.* 174, *sec.* 2 (*c*) (now incorporated verbatim in *N. J. S. A.* 54:10B–2 (*c*); the amendment by *L.* 1951, *c.* 131, *sec.* 1, did not affect this clause), the pertinent portion of which reads as follows:

"(c) 'Net worth' shall mean:
(1) In the case of a corporation—the aggregate of the values disclosed by the books of the corporation for (1) issued and outstanding capital stock, (2) paid-in or capital surplus, (3) earned surplus and undivided profits, (4) surplus reserves which can reasonably be expected to accrue to holders or owners of equitable shares, excluding reasonable valuation reserves *and* (5) *the amount of all indebtedness owing directly or indirectly to holders of ten per centum (10%) or more of the aggregate outstanding shares of the taxpayer's capital stock of all classes, as of the close of a tax year.*" (Emphasis supplied.)

General is a corporation organized and incorporated on December 11, 1933 under the laws of State of New York. It has its principal office at St. Louis, Missouri, but is engaged in the small loan business in New Jersey and other states, including Connecticut, New York, Michigan and Pennsylvania. General had been doing business in New Jersey since December 13, 1940, and was operating under small loan licenses 732, 733, 750, 752, 756, 763, 769, issued by the appropriate department of this State.

General is a wholly-owned subsidiary of the American Investment Company of Illinois (hereinafter referred to as "American"), a Delaware Corporation. At the hearing before the Division of Tax Appeals, General offered proof that American is a publicly-owned corporation with 3,500 stockholders and that it has never engaged in the small loan business "but has deemed it desirable because of the various State laws applicable to small loan licensing to have the small loan operations performed by subsidiary companies." Although the respondent's objection to this offer of proof was sustained, admission was made before the Division of Tax Appeals by the plaintiff that "General got its money from American" and "that American borrowed money from banks or insurance companies." This admission was verified by the testimony of Mr. Letourneau, who was comptroller of American and assistant treasurer of General, who had previously testified (without objection) that American had 3,500 stockholders in 1947. Mr. Letourneau testified that General's small loan business consisted of "borrowing money at current rates and lending that money out to needy individuals at higher rates," that all the monies lent by General in 1947 came from borrowed money and those "borrowings" were from American and from no other source.

General filed its 1948 financial business tax return (based on net worth December 31, 1947). This disclosed an indebtedness of General of $8,040,724. The return also included the information that General's New Jersey gross income was $233,354 during 1947, and that for the same period General's total gross income (both within and without

New Jersey) was $2,181,477. The New Jersey allocation percentage derived from these New Jersey and total gross income figures was .106972, which General applied to its net worth (stated by its own calculation). The resultant figure of $310,925.67 was used as the basis for tax computation, resulting in a tax of $2,331.94. In reporting its net worth General reported "proportionate debt to" American at $2,156,522 and showed the balance of its indebtedness to be owing to creditors other than American. The Director of the Division of Taxation reviewed this return, determined that the entire indebtedness of $8,040,724 was owed to American, General's sole stockholder, and by reason thereof the Director adjusted the net worth calculation under *N. J. S. A.* 54:10B-2 (*c*) (5), *supra*, and levied a deficiency assessment against General in the amount of $4,720.84 with interest. This was paid by General on January 13, 1950, under protest. On October 24, 1950 the protest was denied. General on October 15, 1951 appealed to the Division of Tax Appeals, which on February 10, 1953 dismissed the appeal. General received the judgment on February 13, 1953, and on March 23, 1953 appealed to the Superior Court, Appellate Division. As hereinbefore stated, before hearing there the appeal was certified on our own motion.

The general questions involved in this appeal include substantially the following:

(a) Was General indebted to its sole stockholder, American, within the terms of the Financial Business Tax Law (1946), specifically *N. J. S. A.* 54:10B-2 (*c*) (5) *supra*?

(b) Is the Financial Business Tax Law (1946) constitutional?

(c) Did the Division of Tax Appeals erroneously deny General's proffer of evidence of the method of doing business adopted by General and American, and of the reasons therefor?

I.

General contends that *N. J. S. A.* 54:10B-2 (*c*) (5) (quoted in full, *ante*) is inapplicable to it for the reason that

it does not "owe" American, but that American is a mere "conduit" and General actually is indebted to independent commercial establishments.

In connection with this contention General asserts that the statute should be so construed as to effectuate its general purpose and intent. Statutory language is to be construed with the context of the whole statute, its purposes, and the manner in which the words in question were employed, and to be given the generally accepted meaning unless the contrary intent is clear. *R. S.* 1:1-1. This is a settled rule of statutory construction. For example, see *Grogan v. DeSapio,* 11 *N. J.* 308, 323 (1953). Where there is no ambiguity no judicial construction is necessary. The clause of the statute adverted to is not ambiguous and contains no language admitting of a construction such as is sought by General. Upon the facts of this case General clearly comes within the strict application of the statutory definition of net worth.

In support of its contention that clause (5) of *N. J. S. A.* 54:10B-2(c), *supra,* has no application to it, General asserts that the determination of "net worth" must be made "in accordance with sound accounting principles," *L.* 1946, *c.* 174, *sec.* 5 (*N. J. S. A.* 54:10B-5). Section 5 of the statute relates to the mechanics of calculation by the Director. It has no bearing upon the substantive classifications expressed elsewhere in the act.

General further contends that although the actual facts place it squarely within *N. J. S. A.* 54:10B-2(c)(5), *supra,* it should be relieved therefrom because in reality General effects its borrowing from others, "using" American merely as an agent, this corporate structure having been adopted merely to facilitate the business of the companies and compliance with the small loan laws in various states. Even in the absence of the proofs offered by General but excluded by the Division of Tax Appeals on objection by the respondent, there is adequate evidence to show the fact of the existence of this business practice in this case. However, the argument based thereon is in effect a contention that the

corporate veil should be pierced to enable General to obtain a tax advantage which is denied it by its own voluntary act in subscribing to a course of business · conduct designed to enable it (or its parent) to comply with statutes concerning the small loan business. There was no offer of proof that this corporate structure or business conduct was illegal or fraudulent. It is settled in this State that a corporation holds its property to its own use and not the use of the stockholders, and unless a fraudulent purpose is disclosed there is no justification for attacking the corporate structure. *Frank v. Frank's Inc.*, 9 *N. J.* 218, 223–224 (1952). We find no merit in General's contention that a different philosophy should be applied in matters of corporation excise taxation.

## II.

General contends that the Financial Business Tax Law (1946) is unconstitutional. There are two separate theories advanced in this respect: (1) that *N. J. S. A.* 54:10*B*–2(*c*)(5) as applied deprives General of equal protection of the law under both the Federal Constitution and the New Jersey Constitutions of 1844 and 1947, and (2) that the entire act is unconstitutional for failure to comply with the state constitutional requirement that "* * * every law shall embrace but one object, and that shall be expressed in the title. * * *" *N. J. Const.* 1844, *Art.* IV, *Sec.* VII, *par.* 4; *N. J. Const.* 1947, *Art.* IV, *Sec.* VII, *par.* 4.

(a) General asserts that by *N. J. S. A.* 54:10*B*–2(*c*)(5), *supra,* it has been denied equal protection of the law under the *U. S. Constitution, Amendment* XIV; *N. J. Const.* 1844, *Art.* I, *par.* 1 and *Art.* IV, *Sec.* VII, *pars.* 9 and 11; and *N. J. Const.* 1947, *Art.* I, *par.* 1, and *Art.* IV, *Sec.* VII, *pars.* 7, 8 and 9. Mere reference to these constitutional provisions without quotation therefrom is deemed adequate for consideration of the question involved in regard thereto. This group of constitutional provisions has been adverted to as the "equal protection" clauses. See *Washington National Ins. Co. v. Board of Review*, 1 *N. J.* 545, 552–554 (1949).

A recent expression by this court concerning the effect of these constitutional requirements is found in the decision voiding the Cigarette Tax Act in part, *Lane Distributors, Inc., v. Tilton,* 7 *N. J.* 349, 358–359 (1951). Justice Oliphant there said:

"The act is a general law imposing a tax on the sale of cigarettes and for the purpose of licensing it classifies dealers into different categories. The Legislature may classify licensees based upon their method of doing business just so persons similarly circumstanced are treated alike and receive equal protection. *Ligget Co. v. Lee,* 288 *U. S.* 517, 53 *S. Ct.* 481, 77 *L. Ed.* 929 (1933); *Singer Sewing Machine Co. v. Brickell,* 233 *U. S.* 304, 34 *S. Ct.* 493, 58 *L. Ed.* 974 (1914); *Schwartz v. Essex County Bd. of Taxation,* 129 *N. J. L.* 129 (*Sup. Ct.* 1949). In *Ring v. Mayor and Council of Borough of North Arlington,* 136 *N. J. L.* 494 (*Sup. Ct.* 1948), affirmed 1 *N. J.* 24 (1948), appeal dismissed 335 *U. S.* 889, 69 *S. Ct.* 250, 93 *L. Ed.* 427 (1948), it was held that the state has a wide discretion as to classification of businesses and occupations for revenue and regulation and that the constitutional requirement is satisfied if the legislation is reasonably related to the object of the legislation, and further that there may be a reasonable classification of the objects of the legislation or of the persons whom it affects; and in *State v. Garden State Racing Assn.,* 136 *N. J. L.* 173 (*E. & A.* 1947), the former Court of Errors and Appeals held that there is no express constitutional prohibition against the power of the Legislature to classify objects of legislation.

"Considering first the Cigarette Tax Act, it is beyond question that the state can levy an excise tax on any commodity and can levy a license tax against persons engaged in any business. Such taxes are imposed under the power to raise revenue not under the police power."

█ Thus the question seems to reduce itself to one of reasonableness of classification. We find nothing unreasonable in the classification adopted and the statute applies equally to all who come within that classification. We are of the opinion that General has not been deprived of its constitutional right to equal protection of the law. *Cf. Werner Machine Co., Inc., v. Zink,* 6 *N. J. Super.* 188, 193 (*App. Div.* 1950).

█ (b) General's contention that the Financial Business Tax Law (1946) is unconstitutional as embracing more than one object and for failure to express its object in the

title is without merit. The law of this State is well settled. As recently as *Bucino v. Malone,* 12 *N. J.* 330, 342–344 (1953), this court reiterated the principle, inherent in decisions antedating it, that "It is unnecessary and in fact undesirable for a title to give a resume of the provisions of the act. The constitutional provision is complied with when the title gives notice to the Legislature and the public of the general purpose of the act." Where the general purpose of the act is thus expressed and all the provisions of the enactment are in furtherance of that purpose, *i. e.,* "reasonably connected therewith, and appropriate to the achievement of the legislative object," *Jersey City v. Martin,* 126 *N. J. L.* 353, 363 (*E. & A.* 1941), it does not violate this constitutional restriction on legislation.

The particulars in the statute adverted to by plaintiff in this respect are that (a) pawnbrokers are exempted, (b) insurance companies and banks are excluded, (c) "net worth" is not accorded its usual connotation in the field of accounting, (d) "This act is replete with exceptions, provisos and exemptions * * *," and (e) it "exempts" property from taxation.

The title of the Financial Business Tax Law (1946) was "An Act to impose an excise tax upon certain financial businesses." Since the title is a "label, not an index," *Bucino v. Malone, supra,* the use of the word "certain" clearly is adequate to indicate that some financial businesses are not within its provisions; the measure of a tax is a normal clause to include in such an act, so the "net worth" classification in this respect does not invalidate the act; and exceptions and provisos are not objectionable unless it can be shown that they have no reasonable connection with the purpose of the statute (and this General has not attempted to demonstrate and is not otherwise apparent). Compare *Salomon v. Jersey City,* 12 *N. J.* 379, 383 *et seq.* (1953). The alleged "exemption" is not so. It is merely a provision (appropriate to the title—which provides a tax on certain financial businesses) to make the tax in lieu of other taxes—a reasonable clause to prevent double taxation of the

included businesses and to simplify the administrative details of tax collection. Compare *Atlantic City Transp. Co. v. Director, Div. of Taxation*, 12 *N. J.* 130, 135 (1953), wherein the reason for such a provision is mentioned although no question was presented for a determination thereon.

### III.

 General also contends that the Division of Tax Appeals erred in sustaining the respondent's objection to General's offer of proof concerning the financial transactions between General and American and between American and its creditors. The Division permitted General to spread its proffer on the record in detail, although it declined to permit witnesses to testify on this subject. Critical examination of the record discloses no prejudice to General in the exclusion of this evidence. The proffer related solely to matters germane only to its effort to avoid the application of the statute and not to proof of facts within the statutory scale. In view of the determination that the statute was correctly applied, and is constitutional as applied, the rejection of evidence was proper. The relevancy of testimony must be tested by its probative value with respect to the points at issue. *DeCicco v. Marlou Holding Co.*, 137 *N. J. L.* 186, 189 (*E. & A.* 1948). Compare *Aetna Life Insurance Co. v. City of Newark*, 10 *N. J.* 99, 109, 110 (1952).

### IV.

 General's final question involved is whether the Director arbitrarily refused to permit General and American to file consolidated returns. The statute contains no authorization for the filing of consolidated returns by parent and subsidiary corporations. Such a practice appears to be opposed to the spirit of *N. J. S. A.* 54:10B–2(c)(5), hereinbefore discussed at length, and also opposed to *N. J. S. A.* 54:10B–6(a)(3) which, *inter alia*, permits the deduction from "net worth" of a taxpayer corporation of shares of stock "* * * in corporations taxable under this act

* * * in the same proportion that the issuing corporation's net worth, income or gross receipts, enters into the determination of a tax base" under this statute. Construction or application of a statute in a specific manner is not warranted if the result would be to subvert the purposes contemplated by the Legislature. *Cf. Grogan v. DeSapio, supra,* 11 *N. J.,* at *pages* 316–317.

## CONCLUSION

For the reasons expressed, the judgment of the Division of Tax Appeals, in the State Department of the Treasury, is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.