MOBAY CHEMICAL CORPORATION, PLAINTIFF-RESPONDENT,
v. DIRECTOR, DIVISION OF TAXATION,
DEFENDANT-APPELLANT.

Argued November 9, 1983—Decided June 1, 1984.

*Harry Haushalter,* Deputy Attorney General, argued the cause for appellant (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

*Charles M. Costenbader* argued the cause for respondent (*Stryker, Tams & Dill,* attorneys; *Charles H. Friedrich,* on the brief).

*Kevin J. Coakley* submitted a brief on behalf of *amicus curiae* Hilton Hotels Corporation (*Connell, Foley & Geiser,* attorneys; *Patrick J. McAuley,* on the brief).

*Walter R. Davis, Jr.,* submitted a brief on behalf of *amicus curiae* Prudential Insurance Company of America (*Walter R. Davis, Jr.,* attorney; *Nancy W. Proudfit,* on the brief).

The opinion of the Court was delivered by

SCHREIBER, J.

This case, like its companion, *Fedders Financial Corp. v. Director, Div. of Taxation,* 96 *N.J.* 376 (1984),

requires us to interpret provisions of the New Jersey Corporation Business Tax Act (the Act). The tax under the Act is measured by a corporation's net worth and net income. One provision in dispute made a corporation's "indebtedness owing directly or indirectly" to holders of 10% or more of the corporation's outstanding shares includible in the corporation's net worth. *N.J.S.A.* 54:10A–4(d).[1] The other disputed provision stated that 90% of the amount paid in interest on such indebtedness may not be excluded in computing its net income. At issue again is the meaning of the phrase "owing directly or indirectly" in the context of a corporation's debts owing to an affiliated (nonparent) company.

The Director of the New Jersey Division of Taxation, Department of the Treasury (the Director), determined that plaintiff, Mobay Chemical Corporation, in computing its tax liability under the Act for the year 1974, should have included in the calculation of plaintiff's "net worth" under *N.J.S.A.* 54:10A–4(d) and –4(e) an indebtedness owed to an affiliated corporation, and should not have excluded when calculating "net income" under *N.J.S.A.* 54:10A–4(k)(2)(E) and –4(e) 90% of the interest on this debt. The Director, basing his decision on these two statutory provisions, denied plaintiff's refund claim for $68,826.77.

The taxpayer's appeal to the then-existing Division of Tax Appeals was transferred to the Tax Court in accordance with *N.J.S.A.* 2A:3A–26. The Tax Court upheld plaintiff's claim for a refund. 3 *N.J. Tax* 597 (1981). In an unpublished *per curiam* opinion the Appellate Division affirmed, substantially for the reasons expressed in the Tax Court's opinion. We granted the Director's petition for certification, 93 *N.J.* 274 (1983), and affirm for the same reasons expressed in our

---

[1]This provision was eliminated by *L.*1982, *c.* 55, § 1, effective as of July 1, 1984, *id.* § 3. However, it is relevant and material in this case, which involves taxes for prior years.

opinion in *Fedders v. Director, Div. of Taxation, supra,* decided this day.

The parties stipulated the facts. Plaintiff, a New Jersey corporation, was the product of a merger in 1971 of six affiliated companies of Farbenfabriken Bayer Aktiengesellschaft (Bayer A.G.), a corporation organized under the laws of the Federal Republic of Germany. Plaintiff has been primarily involved in manufacturing and marketing chemical products such as polyurethanes, thermoplastics, and synthetic fibers. As of December 31, 1974, the relevant date for this tax assessment under the Act, plaintiff's stock was owned by Rhinechem Corporation, whose stock in turn was owned by Bayer International Finance N.V., whose stock in turn was owned by Bayer A.G. Another wholly owned subsidiary of Bayer A.G. was Baychem Funding Corporation (Baychem Funding), whose sole function was to serve as a vehicle for debt financing for the plaintiff. Another Bayer A.G. subsidiary that played a part in the debt financing was Bayer Nederland B.V. The corporate schematic was as follows:

On December 31, 1974, the plaintiff was indebted in the principal amount of $56,000,000 to Baychem Funding. At issue is whether this indebtedness owed to an affiliated corporation with a common parent, Bayer A.G., which the Director claims is owed indirectly to that parent, is includible in calculating the plaintiff's net worth. Also at issue is whether 90% of the interest paid by the plaintiff on that indebtedness is includible in the plaintiff's net income.

To determine if the $56,000,000 debt is owed directly or indirectly to Bayer A.G., it is necessary to examine the history and reason for the debt. In 1971, when the predecessor corporations were merged into the plaintiff, the plaintiff assumed the debts of one of its predecessors owed to The Prudential Insurance Company of America (Prudential) and the Equitable Life Assurance Society of the United States (Equitable Life). Subsequently, the plaintiff entered into new note agreements with Prudential and Equitable Life increasing the indebtedness by additional borrowings so that the total loan was $55,000,000. These debts are not at issue. What is important is that these note agreements, like the prior agreements, prohibited plaintiff from entering into any long-term debt obligations, except with Bayer A.G. or a subsidiary of Bayer A.G. In order, among other things, to obtain additional funds without violating the conditions in the note agreements, it was decided that an affiliated company would borrow funds from the public and in turn make loans to plaintiff's predecessor. Accordingly, in 1969, Bayer International Finance issued and sold on the European market $75,000,000 of its 6% bonds due November 1, 1981. Bayer International Finance in turn loaned $56,000,000 of these proceeds to three of plaintiff's predecessors. Upon the merger of these debtor companies into plaintiff, the debt was consolidated and assumed by plaintiff. The promissory notes of the plaintiff evidencing this indebtedness were purchased in 1973 from Bayer International Finance by Bayer Nederland B.V., another subsidiary of Bayer A.G.

In 1972 Baychem Funding was formed for the sole purpose and exclusive business of serving as a vehicle to enable plaintiff to borrow in the United States in conformity with the covenants contained in plaintiff's note agreements with Prudential and Equitable Life. In 1973 Baychem Funding borrowed from five banks and used the loan proceeds to purchase from Bayer Nederland B.V. the plaintiff's promissory notes in the aggregate face amount of $56,000,000. Baychem Funding simultaneously entered into a loan agreement with plaintiff under

which plaintiff received its cancelled promissory notes from Baychem Funding and, in exchange, plaintiff issued five new promissory notes to Baychem Funding in the aggregate face amount of $56,000,000. Each note was for the same sum as one of the promissory notes Baychem Funding had given to each of the five banks. Bayer A.G. unconditionally guaranteed the payment of the principal and interest on plaintiff's notes.

The principles we have enunciated today in *Fedders Financial Corp. v. Director, Div. of Taxation, supra,* are equally applicable here. First, it is clear that plaintiff was not directly or indirectly obligated to its immediate parent, Rhinechem Corporation.[2] Second, plaintiff was not directly or indirectly obligated to its indirect parent, Bayer A.G., for the $56,000,000. Unlike the indication in the opinion of the Tax Court, 3 *N.J. Tax* at 607, an indebtedness owed by the taxpayer to an affiliated corporation is presumed to be indirectly owed to the common parent, unless the affiliated corporation is shown to have been the conduit of funds from a non-affiliated source.

The plaintiff is entitled to exclude from its net worth the debts aggregating $56,000,000 owed to Baychem Funding and to deduct the entire amount of the interest paid on that indebtedness for the year 1974. The judgment is affirmed.

HANDLER, J., dissenting.

This appeal by the Director, Division of Taxation (Director), questions the determination by the Tax Court that a debt owed by Mobay Chemical Corporation (Mobay), to an affiliated corporation did not constitute an indebtedness owed directly or indirectly to a ten per cent or more stockholder under the Corporation Business Tax Act, *N.J.S.A.* 54:10A-1 to -40 (Act).

---

[2]No issue has been raised as to whether Bayer A.G.'s indirect or equitable ownership of plaintiff's stock brings it within the statutory classification as a "[holder] of 10% or more of the aggregate outstanding shares of the taxpayer's [plaintiff's] capital stock of all classes," *N.J.S.A.* 54:10A-4(d), and we need not pass on the point.

The issue is identical to that dealt with in *Fedders Financial Corp. v. Director, Div. of Taxation*, 96 *N.J.* 376 (1984), decided today. As pointed out in that case, the characterization of the debt as includible indebtedness under the Act results in the disallowance of such liability in computing corporate net worth, thereby increasing the taxable net worth of the taxpayer and, further, the disallowance as an income expense of ninety per cent of the interest related to such indebtedness in computing the entire net income subject to tax.

The facts in this case were stipulated. Mobay, the taxpayer corporation, and Baychem Funding Corporation (Baychem Funding), were effectively owned and controlled by Bayer A.G., the major parent of a group of corporations. The Bayer group was involved in the production, manufacture and marketing of dyestuffs, textile auxiliaries, organic and inorganic chemicals, plastics, synthetic rubber, pigments, pharmaceuticals, fibers, pesticides, photographic equipment and other chemical products.

It behooves us to spend some time in mastering the kaleidoscopic corporate constellation of which the taxpayer is an integral part. We start through the intricate and convoluted corporate maze with Mobay's incorporation in the State of New Jersey in 1971, under the name of Baychem Corporation. Its name was changed in 1974 to Mobay Chemical Corporation. Mobay (then Baychem), was itself the product of a merger of six subsidiaries of Farbenfabriken Bayer Aktiengesellschaft (Bayer A.G.), a corporation organized under the laws of the Federal Republic of Germany. Initially, Mobay was owned by three corporations: Bayer A.G., Bayer Foreign Investments Limited (Bayforin), and Bayer International Finance N.V., a Netherlands Antilles corporation. Both Bayforin and Bayer International Finance were wholly owned subsidiaries of Bayer A.G. In 1973, Mobay became a wholly owned subsidiary of Bayer International Finance. Later that year, Bayer International Finance founded Rhinechem Corporation (Rhinechem), which in 1974 acquired from Bayer International Finance the

capital stock of Mobay. Thus, as of 1974, the tax year in question, Mobay was a wholly owned corporation of Rhinechem, which was a wholly owned subsidiary of Bayer International Finance, which was a wholly owned subsidiary of Bayer A.G. Bayer A.G., it is important to note, had formed Baychem Funding as a wholly owned New Jersey corporation in 1972, for the specific purpose of facilitating debt financing in the United States for Mobay.

The particular debt that occasioned this appeal requires us to examine some of the financial history of this corporate family. In 1968 and 1969, two of Mobay's predecessor corporations engaged in long-term financing with Prudential Insurance Company of America and Equitable Life Assurance Society of the United States. Mobay assumed and refinanced these obligations, amounting to $55 million, as evidenced by promissory notes that included unconditional guaranties of payment of principal and interest by Bayer A.G. Bayer International Finance, in late 1969, issued bonds totalling $75 million, which were sold on the European Market, and, by 1972, had loaned $56 million to the predecessor corporations of Mobay, which, upon their merger into Mobay, became a liability owed by Mobay to Bayer International Finance.[1]

Baychem Funding Corporation then entered into a $56 million loan agreement with five banking corporations, using the proceeds to purchase from Bayer Nederland B.V. the promissory notes of Mobay. At the same time, Baychem Funding loaned Mobay $56 million, evidenced by separate promissory notes that also contained the guarantee by Bayer A.G. with regard to payment of principal and interest. Thus, as of December 31, 1974, Mobay was indebted to Baychem Funding in the amount of $56 million, which indebtedness was fully guaranteed as to

---

[1]The $56 million indebtedness owed by Mobay to Bayer International Finance was assigned to Bayer Nederland B.V., a Netherlands corporation, on January 1, 1973. Approximately 90 per cent of the outstanding capital stock of Nederland B.V. was owned by Bayer A.G.

principal and interest by Bayer A.G. On that same balance sheet date, Mobay was also indebted to the insurance companies in the amount of $55 million, which loans were similarly guaranteed by Bayer A.G.

Procedurally, Mobay filed a corporation business tax return for its 1974 calendar year on September 11, 1975. The return was subsequently amended to request a refund of taxes on the ground that the indebtedness in question was incorrectly reflected on the original tax return as being owed to a ten per cent or more stockholder of Mobay and therefore disallowed as a deduction for its statutory net worth. The Director, in a letter determination, denied Mobay's refund claim.

The Director determined that the $56 million indebtedness owed by Mobay to Baychem Funding constituted an indebtedness owed to Bayer A.G., which directly and indirectly owned and controlled both debtor and creditor corporations, and consequently was properly disallowed in computing statutory net worth. The Tax Court, however, reversed the Director's determination, ruling that Baychem Funding was an undercapitalized corporate shell that acted as a mere conduit and, therefore, was not the actual creditor of the $56 million loaned to Mobay. 3 *N.J.Tax* 597 (Tax Ct.1981). In an unpublished *per curiam* opinion the Appellate Division affirmed the Tax Court's ruling. The Director filed a notice of appeal from this judgment.

Unlike the majority, I would reverse the lower courts' judgment, based upon the legal analysis and reasoning that commended my dissent in *Fedders Financial Corp. v. Director, Div. of Taxation, supra,* 96 *N.J.* at 394. In my opinion, the Director properly determined that the $56 million liability owed by plaintiff to Baychem Funding constituted an includible taxable indebtedness in accordance with the statutory language of *N.J.S.A.* 54:10A–4(d), –4(e), 4(k)(2)(E) and 4(e). Both the debtor and creditor corporations were related companies and they were either directly or indirectly owned and controlled by a common parent, Bayer A.G. As noted, Bayer A.G. was the parent of

Baychem Funding and was the parent of Mobay, three times removed by virtue of owning the stock of the two intermediary companies, Rhinechem and Bayer International Finance. Baychem Funding and Mobay were indisputably affiliated corporations.

The majority accepts the reasoning set forth by the Tax Court in support of its reversal of the Director's determination. The Tax Court concluded that the $56 million loan arrangement between Mobay and Baychem Funding was not a disguised contribution to capital. It also found that Baychem Funding was essentially an undercapitalized shell corporation acting as a mere conduit in securing outside credit for Mobay. In accepting these conclusions, the Court misconceives the conceptual underpinnings of the special indebtedness provisions of the Act and disregards the bright line test of nexus and control established as the exclusive determinant for the special tax classification of corporate-stockholder debt. *Kingsley v. Hawthorne Fabrics, Inc.*, 41 *N.J.* 521, 525–26 (1964); *Werner Machine Co., Inc. v. Zink*, 6 *N.J.Super.* 188 (App.Div.1950).

To reiterate, the facts in this case convincingly establish that Bayer A.G. controlled and directed the operations of the entire Bayer group of corporations. Mobay was formed to manufacture and market Bayer A.G.'s product lines in the United States. Mobay itself was the result of a merger of various corporations owned and controlled by Bayer A.G. Baychem Funding was formed solely to facilitate debt financing for Mobay.

It may be accepted that the $56 million indebtedness was *bona fide* and for a legitimate business purpose. That, however, is not relevant to the determinative consideration of whether such indebtedness is directly or indirectly owed to a ten per cent or more stockholder within the terms of the Act. As I stressed in *Fedders Financial Corp., supra,* 96 *N.J.* at 406, the tax authorities are not required to follow the convolutions of the taxpayer's business strategy in arriving at the

correct statutory tax result. *See General Trading Co. v. Director, Div. of Taxation,* 83 *N.J.* 122, 137 (1980).

The Tax Court's consideration of whether Baychem Funding was a viable corporation, accepted by the majority, is also misplaced. The record clearly reflects that Baychem Funding was a real and functioning corporate entity specifically created to facilitate the debt financing of Mobay. The capitalization of Baychem Funding was not germane to its corporate purpose. Baychem Funding used the proceeds from the $56 million loan arrangement to acquire the $56 million liability Mobay owed to Bayer Nederland B.V. The fact that Baychem Funding may have acted as a "conduit" in securing financing for Mobay does not impugn the transaction or negate Baychem Funding's corporate status or identity. The identical contention was explicitly rejected in *General Public Loan Corp. v. Director, Div. of Taxation,* 13 *N.J.* 393 (1953). There a "conduit arrangement" utilized by the parent to provide its subsidiary with outside credit was not considered a proper justification for avoiding the application of the special indebtedness provisions of the Act. 13 *N.J.* at 400–01. The fact that Baychem Funding utilized outside credit sources in order to assume the $56 million indebtedness owed by Mobay to Bayer Nederland B.V. does not negate the existence of the indebtedness between Baychem Funding and Mobay. That indebtedness was so structured by Bayer A.G. to facilitate its operations in the United States through subsidiary instrumentalities. Mobay should not be permitted to disavow its own corporate structure or intercorporate transaction in order to avoid the tax consequences that follow from its conscious decision.

We recognized this principle in *Household Finance Corp. v. Director, Div. of Taxation,* 36 *N.J.* 353, 363 (1962), noting that the State is not required to "explore the ramifications of corporate structures to determine the justice of recognizing corporate entities in each factual complex."

... [W]hile a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice,

whether contemplated or not.... (quoting *Commissioner v. National Alfalfa Dehydrating & Milling Company*, 417 *U.S.* 134, 149 [94 *S.Ct.* 2129, 2137], 40 *L.Ed.*2d 717 (1974).)

*See also General Trading Co. v. Director, Div. of Taxation, supra,* 83 *N.J.* at 136-37; *Somerset Apts. v. Director, Div. of Taxation,* 134 *N.J.Super.* 550, 556-57 (App.Div.1975).

The Tax Court and the majority also misconceive the significance of the guarantee by the major parent, Bayer A.G., of the $56 million loan arrangement between Mobay and Baychem Funding. The characterization of this liability as an includible indebtedness in measuring the net worth tax base under the Act cannot be influenced by the Bayer A.G. guarantee. Rather, the guarantee emphasizes the significance of the control exercised by the parent over the entire group of Bayer companies and underscores the affiliation between the debtor and creditor corporations in this case.

I am satisfied, therefore, that the $56 million liability owed by Mobay to Baychem Funding as of December 31, 1974 constituted a debt indirectly owed to a ten per cent or more stockholder within the meaning of the indebtedness provisions of the Act, since Bayer A.G. clearly owned and controlled both affiliated corporations. In my view, the Director properly required the inclusion of the $56 million in computing Mobay's net worth tax base and in disallowing ninety per cent of the interest expense related to this indebtedness in calculating Mobay's net income tax base under the franchise tax act.

Accordingly, I dissent from the majority's opinion in this case.

O'HERN, J., joins in the dissenting opinion.

*For affirmance* —Justices CLIFFORD, SCHREIBER, POLLOCK and GARIBALDI—4.

*For reversal* —Justices HANDLER and O'HERN—2.