KAHN, J.T.C.
This is an appeal from the determination by the Director, Division of Taxation that taxpayer was not entitled to deduct *475 certain interest expenses from its net income or exclude certain loan proceeds from its net worth in determining the amount due under the New Jersey Corporation Business Tax, N.J.S.A. 54:10A-1 et seq. The Director assessed additional taxes for the 1980 tax year of $42,659.47, as well as interest of $20,476.54 and penalties of $4,265.94, all of which were paid by the taxpayer prior to the filing of the complaint.
The pertinent facts are generally undisputed. Taxpayer is a Delaware corporation having its principal place of business in New Jersey. It is engaged in the wholesale marketing and distribution of petroleum products. Taxpayer is the wholly-owned subsidiary of Stinnes Corporation, a Delaware corporation having its principal place of business in New York. Stinnes Corporation acts as a holding company for its subsidiaries and has no business operations other than the administrative functions it performs for these companies.
The transactions which formed the basis of this suit involved the use of a short-term credit facility at European American Bank and Trust Company (EAB), a New York bank. The credit facility was negotiated for by Stinnes Corporation and was utilized for the benefit of its subsidiaries. The procedure for utilizing the credit facility can be described in the following manner.
Taxpayer relied on the testimony of Thomas Mastroeli, the former treasurer of Stinnes Corporation, as well as various exhibits to describe the credit facility. Among the exhibits was a letter from EAB to Stinnes Corporation dated December 29, 1978 in which a revolving credit line for $9,200,000 was established. This letter provided that the facility was “available for borrowings by all subsidiaries of Stinnes Corporation under its guarantee.” The letter also provided that the borrowing subsidiary was to submit a promissory note for each borrowing. The credit facility was also available to the subsidiaries for letters of credit and acceptance financing, for which Stinnes Corporation had to execute documents exhibiting its primary *476 liability. Mastroeli described the flow of funds and the necessary bookkeeping for the credit facility.
Stinnes Corporation maintained an account at EAB, known as a concentration account, through which the funds flowed. Each of the subsidiaries, including taxpayer, was empowered to draw directly from Stinnes Corporation’s account. The funds were drawn for the short-term financing of the subsidiaries’ trading activities, in taxpayer’s case, oil shipments and accounts receivable. When the financed deal was completed, generally within 30 days, the subsidiary would return the funds to the credit facility.
The movement of funds to and from the credit facility was recorded through the concentration account and the individual accounts of the subsidiaries, known as zero balance accounts (ZBAs).
A withdrawal by a subsidiary was reflected by a negative entry in the ZBA. A repayment by the subsidiary was reflected by a positive entry in the ZBA. At the end of each day the balance in each ZBA, either positive or negative, was brought to zero. A negative balance in a ZBA was increased to zero by a negative entry in the concentration account, representing, at least theoretically, a flow of funds out of the concentration account and into the ZBA. A positive balance in a ZBA was decreased to zero by a positive entry in the concentration account, representing a repayment. The ZBAs were merely a bookkeeping mechanism used by Stinnes Corporation to determine on a daily basis the extent of the borrowing of each subsidiary. While the bookkeeping method makes it appear that the funds went from the bank to Stinnes Corporation and then to the subsidiary, in actuality the subsidiaries withdrew directly from Stinnes Corporation’s account. Repayments were also made directly to this account.
The concentration account, like the ZBAs, had a daily balance, either positive or negative, representing the net borrowing of the subsidiaries. This account also had to be brought to zero each day. Stinnes Corporation would accomplish this by *477 borrowing funds from any one of several banks. Thus, while the credit facility was maintained at EAB, the funds which flowed through it were obtained from whichever bank offered the most favorable rates on a particular day, including EAB. The loan proceeds were placed directly in the concentration account. When the subsidiaries returned the funds to the credit facility, and the concentration account increased to a positive balance, the loans would be repaid, with the interest payments made by Stinnes Corporation with funds from the subsidiaries.
The credit facility and the various loans were handled by Stinnes Corporation. The loans and credit facility were maintained in its name and remained its responsibility. However, none of the funds made available through the credit facility ever flowed directly to Stinnes Corporation. Its only involvement with the facility was administrative. Stinnes Corporation’s justification for using the facility was to minimize the overall interest rates for the operating companies and maximize the utilization of cash by those companies. The testimony demonstrated that this type of lending facility was not available to the individual subsidiaries; the subsidiaries were unable to either borrow such amounts or obtain similar loans at such low rates. There was also testimony that this type of facility was common for trading companies such as taxpayer.
Taxpayer did not include any amount of the withdrawals from the EAB credit facility in its net worth and deducted interest payments on these withdrawals in full for purposes of computing its New Jersey corporation business tax. The Director contended that the funds from EAB were includable in net worth under N.J.S.A. 54:10A-4(d)(5) as indebtedness owed directly or indirectly to holders of 10% or more of the aggregate outstanding shares of capital stock of all classes. Pursuant to N.J.S.A. 54:10A-4(k), the Director likewise denied a deduction for 90% of the interest on that indebtedness. Plaintiff contends that these determinations by the Director were erroneous in that alternatively (1) the statute was not meant to apply to this situation, since Stinnes Corporation was merely a *478 conduit for the funds from EAB, (2) the actual borrower from EAB was taxpayer, or (3) the statute was not intended to cover short-term financing.
From the above I can make the following preliminary findings of fact. The technical lender in this instance is Stinnes Corporation, taxpayer’s parent. While the letter of December 28, 1978 described the subsidiaries as “borrowers” and Stinnes Corporation as a “guarantor”, the actual procedure followed was to have the funds flow to Stinnes Corporation’s concentration account, from which taxpayer made withdrawls and to which it later made repayments. Interest payments were made by Stinnes Corporation, which later collected the proportionate shares from the subsidiaries. Taxpayer’s theory is that Stinnes Corporation is a mere conduit and that its role in the transfer of funds should be ignored. In other words, taxpayer seeks to distinguish the case where a parent lends its own funds to a subsidiary from the case where a parent borrows from a bank or other lending institution for the purpose of lending to a subsidiary. In the former case, it argues, the loan is a disguised capital contribution which the statute attempts to attack while the latter situation is in reality a direct loan from the lending institution to the subsidiary, with the parent being used as a convenient mechanism for arranging the loan. Under taxpayer’s theory, the statute is not designed to combat the latter situation since no equity contribution is being hidden.
Taxpayer relies primarily on the two most recent interpretations of the relevant statute, Fedders Financial Corp. v. Taxation Div. Dir., 96 N.J. 376, 476 A.2d 741 (1984) and Mobay Chemical Corp. v. Taxation Div. Dir., 96 N.J. 407, 476 A.2d 758 (1984). Both cases dealt with the question of whether a debt to an affiliated corporation constitutes an indebtedness owing directly or indirectly to a 10% stockholder. The Fedders ease dealt with a loan to a parent from a wholly-owned subsidiary while Mobay dealt with a debt between two sister corporations who had a common parent. Thus the cases are distinguishable on their facts, the instant case being an alleged loan from a parent to a subsidiary. Taxpayer, however, relies on *479 the language in Mobay, in whieh the court states that “an indebtedness owed by the taxpayer to an affiliated corporation is presumed to be indirectly owed to the common parent, unless the affiliated corporation is shown to have been the conduit of funds from a non-affiliated source.” Mobay Chemical Corp. supra, 96 N.J. at 412, 476 A.2d 758; emphasis supplied. Taxpayer reasons that an indebtedness owed directly to a parent should, by virtue of the above reasoning, be presumed directly owed to that parent unless the taxpayer can establish that the parent is merely “a conduit of funds from a non-affiliated source”. The proofs offered attempted to establish that the parent corporation was in fact such a conduit.
The Director rejects this interpretation of Mobay and Fedders, seeking to distinguish them on a factual basis, and instead relies on General Public Loan Corp. v. Taxation Div. Director, 13 N.J. 393, 99 A.2d 796 (1953). In that case the taxpayer was involved in the small loan business. It obtained the funds to make these loans from its parent corporation, who in turn had borrowed the money from banks and insurance companies. As in the instant case, the taxpayer had argued that the parent corporation was a mere “conduit” and that the taxpayer actually borrowed the money from the insurance companies and banks. The taxpayer there had used its parent to facilitate its business and comply with the small loans laws in various states. Id. at 400, 99 A.2d 796. The Court, however, refused to “pierce the corporate veil” of the taxpayer’s parent corporation and held the taxpayer to its chosen form, rejecting taxpayer’s claim that its parent corporation was a mere conduit. Id. at 400-401, 99 A.2d 796.
The Director also rejects taxpayer’s claim that it can somehow overcome the presumption that the debt was owed directly to the parent corporation by establishing that the parent is a mere conduit. He relies on the dicta of Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 197 A.2d 673 (1964) where the court stated that the statute “conclusively presumes that a corporate indebtedness owing to a 10% stockholder or a member of his immediate family is equity capital.” Id. at 525, 197 A.2d 673.
*480 The central issue in the case then is the extent to which a presumption attaches to a loan from a parent to a subsidiary. Taxpayer’s position is based on the intent of the statute. The primary goal of the statute was to prevent corporations holding extensive assets from “borrowing money from large stockholders (which in reality increases their operating capital), reduce their reported net worth and avoid payment of a higher franchise tax.” Werner Machine Co., Inc. v. Zink, 6 N.J.Super. 188, 193, 70 A.2d 774 (App.Div.1950). Taxpayer argues that no tax avoidance purpose is present and therefore the statute should not apply. However, while the cases invariably recognize this as the primary purpose of the statute they have just as readily acknowledged that “[t]he statute is not limited in its reach to forms of indebtedness representing disguised capital.” Skyline Industries v. Taxation Div. Dir., 3 N.J.Tax 612, 618 (Tax Ct.1981). The Skyline Industries case was relied upon in GATX Terminals Corp. v. Taxation, Div. Dir., 5 N.J.Tax 90 (Tax Ct.1982), where the court stated that “the 10% rule cannot be limited to those situations where the loans were made to avoid the tax on capital investments.” Id. at 98.
After reviewing the relevant case law, and in particular, the various interpretations of the scope of the statute, I find that loans from a parent to a wholly-owned subsidiary are irrebutably presumed as a matter of law to be direct loans from a 10% stockholder and thus includable in net worth. Kingsley v. Hawthorne, supra. In GATX Terminals Corp. v. Taxation Div. Dir. (App.Div.1985), the court stated that the Fedders and Mobay opinions confirmed “the validity of [N.J.S.A. 54:10A-4(d)(5) and (k)(2)(e) ] so long as the indebtedness in question is owed by the taxpayer to its parent rather than to an affiliate with whom it shares common ownership.” Slip opinion at 2. The loans from the banks were the legal obligation of the parent and, despite the fact that the parent never benefited directly from the use of these funds, the parent will be considered the actual borrower.
*481 Taxpayer argues that its parent was a nominal debtor and its role should be ignored. The facts suggest otherwise. Despite EAB’s acknowledgement that the subsidiaries were free to draw on the account, the EAB account and the various loans which flowed into this account were in the name of the parent. Ultimate legal responsibility rested with the parent. Had the parent been a mere guarantor of the loans, the conduit theory may have been more persuasive.[1] However, to equate Stinnes Corporation’s relationship with the lenders to that of a guarantor is untenable.[2] EAB’s classification of Stinnes Corporation as a guarantor in its December 28, 1978 letter is unpersuasive in light of the actual procedures described by Mastroeli. Primary responsibility for all loan proceeds never left Stinnes Corporation.
Plaintiff makes the final argument that the statute was not intended to cover short-term loans. No such exception is provided for in the statute, nor has the case law developed one. For example, in Cliffside Dyeing Corp. v. Zink, 6 N.J.Super. 185, 70 A.2d 778 (App.Div.1950) the court considered accrued salaries, bonuses and dividends owing to stockholders to be taxable indebtedness. I find no distinction between the short-term nature of these obligations and those in the instant case.
I, therefore, affirm the determination of the Director. The Clerk of the Tax Court is directed to enter judgment accordingly-

 See tedders Financial Corp. v. Taxation Div. Dir., supra, where the court suggests that a guarantee by a parent may not make the debt indirectly owing to the parent, at least until it had been triggered and satisfied. Id., 96 N.J. at 393, 476 A.2d 741.

 See Interstate Storage and Pipeline Corp. v. Director, Div. of Taxation, (N.J.) St. Tax Rep. (CCH) at 200-708 (Div. of Tax Appeals, Dec. 2, 1976), where the court rejected taxpayer’s argument that its parent, who had acquired the mortgage notes of taxpayer, was merely a guarantor since the taxpayer still made direct payments to the original creditor.