LASSER, P.J.T.C.
Rollins Leasing Corp. (taxpayer) contests a corporation business tax (CBT) deficiency assessment imposed by the Director of the Division of Taxation (Director) and contends that Director improperly disallowed deductions for interest paid on promissory notes issued by taxpayer. Director determined that interest payments made by taxpayer to Continental Illinois National Bank and Trust Company of Chicago were not paid on account of an obligation owed to the bank, but were paid on an obligation owed to its corporate parent, Rollins Truck Leasing Corporation (RTL). Director excluded these interest payments as deductions in computing taxpayer’s entire net income pursuant to N.J.S.A 54:10A-4(k)(2)(E) of the Corporation Business Tax Act (the statute). This section denies deduction of 90% of interest on an indebtedness owed to holders of at least 10% or more of the debtor’s stock.
This issue is before the court on stipulated facts pursuant to R. 8:8-l(b).
Taxpayer, a Delaware corporation, is actively engaged in the leasing, renting and maintenance of trucks, tractors and trailers to third parties. Taxpayer is a 100%-owned subsidiary of RTL, a publicly-held company, which is characterized by taxpayer as merely a holding company. RTL issued a series of seven collateral trust indentures (debentures) between March 21, 1983 and March 15, 1989, which were sold to the public to raise cash necessary for the operation of taxpayer’s business. The parent issued the debentures because, as a public company listed on the New York Stock Exchange with a bond rating, it was in a better position than taxpayer to borrow money from the public. Simultaneously with the issuance of the debentures, the proceeds of the financing were transferred by RTL to Taxpayer in exchange for taxpayer’s promissory notes (notes) payable to RTL. The notes constituted collateral under the debentures. Also simultaneously, the notes were assigned and negotiated by RTL to Continental *362 Illinois National Bank and Trust Company of Chicago as trustee for the debenture holders (trustee). Taxpayer made payments on the notes directly to trustee.
On July 23, 1991, a notice of assessment was sent to taxpayer, assessing CBT deficiencies in the amount of $251,936, plus penalties and interest, for the five-year period October 1, 1984 through September 30, 1989. These deficiencies, in part, resulted from Director’s disallowance of amounts that taxpayer deducted as interest expense on its CBT returns. Director, on May 8, 1992, issued a revised final determination in the amount of $239,063, plus penalties and interest. On July 13, 1992, taxpayer filed a complaint with this court challenging that part of the deficiency assessment pertaining to the disallowance of interest deductions paid to the trustee, Continental Bank.

I.

The CBT is an annual franchise tax imposed by New Jersey on “[e]very domestic or foreign corporation ..., for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State.” N.J.S.A 54:10A-2. The tax is computed by aggregating prescribed percentages of net worth[1] and net income. N.J.SA 54:10A-5. The Act states:
“Entire net income” shall mean total net income from all sources, ... [and] shall be determined without the exclusion, deduction or. credit of: ... (E) 90% of interest on indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayer’s capital stock of all classes; [N.J.SA. 54:10A-4(k) (emphasis added).]
“Indebtedness owing directly or indirectly” shall include, without limitation thereto, all indebtedness owing to any stockholder or shareholder and to members of his *363 immediate family where a stockholder and members of his immediate family together or in the aggregate own 10% or more of the aggregate outstanding shares of the taxpayer’s capital stock of all classes. [N.J.S.A 54:10A-4(e).]
Director, pursuant to N.J.S.A. 54:10A-27, promulgated regulations interpreting and applying the “indebtedness owing directly or indirectly” provision of the Act.
(b) “Indebtedness owing directly or indirectly” includes but is not limited to all indebtedness owing to any stockholder or shareholder and to members of his immediate family where a stockholder and members of his immediate family together or in the aggregate own or beneficially own 10 percent or more of the aggregate outstanding shares of the taxpayer’s capital stock of all classes.
(d) Direct indebtedness: In the case of a creditor, corporate or otherwise (other than an individual), including an estate, trust or other entity, indebtedness is includible by reason of direct holding of taxpayer’s stock by the creditor whether or not the credit [sic] is functioning as a mere conduit of funds from a third party source.
(e) Indirect indebtedness: Indebtedness must be owing directly or indirectly to a 10 percent shareholder. Indebtedness owing by a tajqpayer to a commonly controlled creditor is presumed to be owing indirectly to the common parent. However, indebtedness between commonly controlled debtors and creditors may not be attributable as owing indirectly to the common shareholder if it can be shown that the common shareholder was in no way the source of the funds. The taxpayer must establish that the common shareholder was not the source of the funds since it has the burden of defeating the presumption. The taxpayer must conclusively establish that:
1. The creditor is merely a conduit of funds from an unrelated third party source; or
2. The indebtedness was from funds generated by the creditor from its own operations and clearly not in any way attributable to or funded by the common shareholder. [N.J.AC. 18:7-4.5 (examples omitted).]
This regulation, drafted in response to the opinions of the New Jersey Supreme Court in Fedders Fin. Corp. v. Taxation, Div. Director, 96 N.J. 376, 476 A.2d 741 (1984) and Mobay Chem. Co. v. Taxation, Div. Director, 96 N.J. 407, 476 A.2d 758 (1984), provides a conduit safe harbor for indebtedness owed indirectly by a subsidiary to its parent where the parent is merely a conduit of funds from a third-party source. However, the regulation ex *364 pressly excludes the conduit safe harbor when the parent is directly the creditor even though the source of the funds may be a third party.
The sole issue in this case is whether Taxpayer owes the indebtedness, evidenced by the notes to RTL, directly or indirectly, to its corporate parent.

II.

The law as it presently exists distinguishes between loans made directly and loans made indirectly by a parent corporation to its subsidiary. Indirect loans include loans made by a member of the affiliated corporate group, e.g., a sister corporation[2] or a subsidiary of a subsidiary, or loans by unaffiliated third parties that are guaranteed by the parent. Prior to Fedders and Mobay, all indebtedness to the parent, direct or indirect, came within the statutory exclusion of deduction of 90% of interest paid by the borrower and the loan was includible in the net worth of the borrower.
In General Public Loan Corp. v. Director, Div. of Taxation, 13 N.J. 393, 99 A.2d 796 (1953), the Court dealt with a similar provision in the Financial Business Tax Law, N.J.S.A. 54:10B-2(c)(5). The taxpayer argued that it was not indebted to its parent because the parent was “a mere ‘conduit’ and [the taxpayer] actually is indebted to independent commercial establishments.” Id. at 400, 99 A.2d 796. The Court determined that the loan was from the parent to its subsidiary. The Fedders Court, commenting on the General Public Loan holding that the loan was includible in the net worth of the subsidiary, stated: “We affirmed that determination despite [the parent’s] protestation that it had borrowed the monies from banks and insurance companies, which were the real creditors. The literal language of the statute *365 compelled the result because the indebtedness was owed directly from the taxpayer to its parent.” 96 N.J. at 387, 476 A.2d 741.
In Werner Mach. Co., Inc. v. Zink, 6 N.J.Super. 188, 70 A.2d 774 (App.Div.1950), the Appellate Division of the Superior Court addressed the issue of whether indebtedness to a sister corporation was directly or indirectly owed to the parent corporation which wholly owned both the taxpayer/debtor corporation and its sister/creditor corporation. The sister/creditor was the source of the funds. The court held that the term “all indebtedness,” as used in the statute, is to be given its ordinary meaning in the absence of an indication of a special meaning and thus all indebtedness to affiliated corporations is to be regarded as indebtedness to the parent. Id. at 194, 70 A.2d 774. The court affirmed the determination of Director that the debt owed to the sister/creditor corporation is to be included in the net worth of the taxpayer/debt- or corporation. Id. at 195, 70 A.2d 774.
In Fedders, supra, the taxpayer was a wholly-owned subsidiary of its corporate parent. In 1972, the taxpayer created and capitalized its own wholly-owned subsidiary. The taxpayer’s subsidiary sold debentures to unrelated parties. Although the taxpayer’s corporate parent guaranteed the debt, the taxpayer’s subsidiary was primarily obligated to repay the debt. During the years 1972 to 1974, the taxpayer borrowed funds from its subsidiary. The amount borrowed was many times greater than the amount originally used to capitalize the taxpayer’s subsidiary.
In Fedders, the New Jersey Supreme Court held that the Statute did not permit Director to conclusively presume that loans among parties under common control are loans owed to the common parent. 96 N.J. at 392, 476 A.2d 741. The Court held: “When it is not clear whether the indebtedness is indirectly owed to the parent, the taxpayer has the burden of demonstrating that the indebtedness is owed to third party creditors and not to the parent corporation.” Id. at 389, 476 A.2d 741. The Court found that the taxpayer’s subsidiary borrowed funds from unrelated sources and loaned these funds to the taxpayer. Id. at 393, 476 A.2d 741. Further, the Court found that there was an undisputed *366 business reason for the creation of the subsidiary by the taxpayer and for the subsequent loan transactions. Id. at 393, 476 A.2d 741. The Court held that the taxpayer did not owe the indebtedness to its corporate parent and ruled that the taxpayer was entitled to exclude from its net worth debts owed to its subsidiary and to deduct the entire amount of interest paid on that indebtedness. Id. at 393-94, 476 A.2d 741.
In Mobay, supra, a companion case to Fedders, the taxpayer was wholly owned by a parent corporation. The taxpayer borrowed from its sister corporation and contested the determination of Director that the debt was indirectly owed to its corporate parent. The taxpayer was contractually prohibited from entering into any long-term debt obligations, except with the corporate parent or one of its subsidiaries. To obtain additional funds, the sister corporation borrowed funds from the public and, in turn, made loans to the taxpayer. The sister corporation was formed solely to enable the taxpayer to borrow funds from the public. The sister corporation was not the source of the funds but borrowed funds from unrelated banks. Simultaneously, the taxpayer issued promissory notes to its sister corporation. The taxpayer’s corporate parent guaranteed the debt.
In Mobay, the New Jersey Supreme Court stated “an indebtedness owed by the taxpayer to an affiliated corporation is presumed to be indirectly owed to the common parent, unless the affiliated corporation is shown to have been the conduit of funds from a non-affiliated source.” 96 N.J. at 412, 476 A.2d 758. To determine if the debt was owed directly or indirectly to the corporate parent, the Court examined the reason and history of the debt. The Court found that the transaction was entered into for a business purpose and that the funds were borrowed from an unrelated source, and held that the taxpayer was entitled to exclude the debt from its net-worth calculation. Id. at 411-12, 476 A.2d 758.
In Stinnes Interoil, Inc. v. Director, Div. of Taxation, 7 N.J.Tax 473 (Tax 1985), aff'd, 8 N.J.Tax 336 (App.Div.1986), the taxpayer was a wholly-owned subsidiary which borrowed funds from its corporate parent. An unaffiliated bank established a *367 credit line for the corporate parent, the primary obligor, and against which the taxpayer borrowed funds. Withdrawals and repayments flowed through a bank account maintained by the corporate parent. The funds were borrowed from an unrelated source. The taxpayer, citing Mobay, argued that its parent was the conduit of funds from a non-affiliated source.
The Stinnes Interoil court focused on the parent’s legal obligation as primary obligor for the debt and the fact that the parent, not the taxpayer, was considered the actual borrower. “Ultimate legal responsibility rested with the parent. Had the parent been a mere guarantor of the loans, the conduit theory may have been more persuasive.” Id. at 481. The court found “that loans from a parent to a wholly-owned subsidiary are irrebuttably presumed as a matter of law to be direct loans from a 10% stockholder and thus includable in net worth,” id. at 480 (citing Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 197 A.2d 673 (1964)), and held that the taxpayer was not entitled to deduct interest expenses or exclude loan proceeds from its net worth. Id. at 481.
In Toys “R” Us, Inc. v. Taxation Div. Director, 8 N.J.Tax 51 (Tax 1985), the taxpayer was a wholly-owned subsidiary. The corporate parent maintained an account through which the taxpayer withdrew and repaid funds. The taxpayer guaranteed the parent’s debt to outside creditors. Subsequently, the parent corporation filed for bankruptcy protection, and trustees were appointed by the court. Since the bankruptcy order prevented the taxpayer from making loan repayments to its parent, the taxpayer accumulated large cash reserves during the bankruptcy reorganization. Pursuant to the reorganization plan of its corporate parent, the taxpayer made cash payments to creditors of the parent. The taxpayer challenged the determination of Director that the indebtedness owed by the taxpayer to its corporate parent was included in its net worth.
In Toys “R” Us, this court refused to characterize the taxpayer’s corporate parent as a conduit for debt payment to outside creditors, id. at 70, because, although the loan guarantees were secured by the stock of the taxpayer, the taxpayer was not *368 directly obligated to the unrelated creditors until the corporate parent defaulted on the loans. Id. at 68. The court upheld the determination of Director that the taxpayer must include indebtedness owed to its parent corporation as part of its net worth in computing its franchise tax liability. Id. at 70.

III.

In the present ease, taxpayer argues that the entire transaction was in effect a loan from the third-party debenture holders to taxpayer. Taxpayer contends that, from the inception of the transaction, it, not RTL, had the primary obligation for repayment of the loan to the trustee, and that the economic substance of the transaction was effectively a borrowing by taxpayer from the public, not from its parent, RTL. Taxpayer urges the court to “focus on the integrated transaction and recognize that each part [of the transaction] was specifically contingent on the successful completion of the next.” Taxpayer argues that the obligation of taxpayer to the trustee is not directly owed to its parent because RTL has no ownership interest in the trustee. Taxpayer contends that its indebtedness runs to the trustee for the benefit of the debenture holders, and not to its corporate parent, RTL, because the notes were negotiated as part of a simultaneous transaction.
Taxpayer further argues that Mobay and Toys “R” Us distinguish between a debt and a guarantee. Taxpayer states that RTL, its parent, is merely a guarantor “secondarily and contingently liable” on the notes and that the parent’s future liability will only be triggered if taxpayer defaults on payment. Taxpayer distinguishes the facts of Stinnes Interoil, supra, where the corporate parent was the primary obligor for the borrowed funds at issue, from those of the present case, where taxpayer contends that the trustee looks to it, not RTL, as primary obligor for payments on the loan. Taxpayer cites the Uniform Commercial Code (UCC) to support its contention that taxpayer is primarily liable to the trustee. Taxpayer alleges that, as a result of the negotiation of the notes, the Trustee acquired all rights of a “holder” of the notes, N.J.S.A 12A:1-201(20); N.J.S.A 12A:3- *369 201(1); N.J.S.A. 12A:3-202(1), including the right to enforce payment in its own name against taxpayer. N.J.S.A. 12A:3-301. Taxpayer contends that these UCC rights demonstrate that the primary debt obligation is between taxpayer and trustee.
Director asserts that taxpayer owes the debt directly to RTL and that, regardless of direct payment by taxpayer to trustee, “it is evident that the Trustee never loaned any money to either RTL or [taxpayer], nor did the Trustee acquire an outright ownership in the Notes.” Director contends that the transaction was designed to raise funds for taxpayer, that RTL was liable for repayment of the debt and that taxpayer has indemnified RTL for amounts due to the debenture holders. Moreover, Director contends that RTL did not assign to the trustee the right to use payments from taxpayer for the trustee’s own use but for payment of the parent’s obligation under the debentures.

IV.

In Fedders, supra, the Court held that if a debtor corporation borrowed funds from a creditor/sister corporation and the debtor could establish that the corporate parent “is not the source of the money, then the indebtedness would not be indirectly owing to the parent and hence would not be includible in [the debtor corporation’s] net worth calculation.” 96 N.J. at 389, 476 A.2d 741. In Mobay, supra, the Court stated that the taxpayer could show that an affiliated corporation was a conduit of funds from a non-affiliated source to overcome a presumption of indirect indebtedness to the common parent. 96 N.J. at 412, 476 A.2d 758. In N.J.A.C. 18:7-4.5(e), supra, the Director followed the Fedders and Mobay holdings excluding from the statute indirect indebtedness where the affiliated creditor is merely a conduit for funds from an unrelated third party.
I find that the parent, RTL, is the primary obligor under the debenture agreements. The parent borrowed the funds and immediately loaned to them to taxpayer receiving notes in exchange which it negotiated to the trustee. The introduction of a trustee into the transaction does not relieve the parent of its *370 primary obligation to repay the funds that it borrowed from the debenture holders. The parent is not thereby transformed from a primary obligor to a guarantor. Taxpayer is not borrowing funds from the sister corporation or its own subsidiary as in Fedders and Mobay. Taxpayer is borrowing from its parent and, thus, the indebtedness is direct, not indirect.
The use of a trustee and the negotiation of the notes are integral parts of the transaction in which the parent has borrowed directly for the purpose of lending to its subsidiary. The payments by taxpayer to the trustee constitute a repayment by the subsidiary of the parent’s primary obligation to repay the debentures. Therefore, the loan repayments must be treated as loan repayments by the subsidiary to its parent.
The statute continues to refer to “all indebtedness.” The Fedders and Mobay exception based on indirect indebtedness and the conduit theory does not apply here. The statutory inclusion of indebtedness to parent in the net worth of the subsidiary and partial exclusion of interest deduction to the subsidiary may have its genesis in an intent to deal with undercapitalized subsidiaries as indicated in Fedders, 96 N.J. at 397, 476 A.2d 741. However, the statute and regulation are unambiguous. Therefore, unless there is change in the legislation, the test under the statute, regulation and existing case law is not whether a subsidiary is undercapitalized, but whether the subsidiary has borrowed directly from its parent. Therefore, I conclude that since taxpayer has borrowed directly from its parent, the statute applies and subsidiary must include the loan in its net worth and may not deduct interest on the loan to the extent prohibited by the statute.

 Beginning with the accounting or privilege period on or after April 1, 1983, the net worth component of the tax base is phased out. N.J.S.A. 54:10A-5(a). The net worth component no longer applies to accounting or privilege periods beginning on or after July 1, 1986. Ibid. In the present case, the net worth component only applies to the period October 1, 1984 through September 30, 1986, as taxpayer’s fiscal year begins October 1.

 A sister corporation is defined as: “Two corporations having common or substantially common ownership by same shareholders." Black's Law Dictionary 720 (abr. 5th ed. 1983).