HOPKINS, J.T.C.
This is an appeal from the determination by the Director, Division of Taxation, that plaintiff was liable under the Corporation Business Tax Act, N.J.S.A. 54:10A-1 ct seq., for a deficiency of $95,863.13, together with interest thereon, for the 1976 tax year. At issue is the propriety of including in plaintiff’s net worth, pursuant to N.J.S.A. 54:10A 4(d), a liability in the amount of $59,324,055 owing to its parent, General American Transportation Corporation (GATC (1975)). Concomitant with that issue is the propriety of the Director’s exclusion as a deduction from net income, pursuant to N.J.S.A. 54:10A— 4(k)(2)(E), of 90% of the interest expense incurred by plaintiff with regard to the indebtedness. Plaintiff is not contesting a separate adjustment which redetermined a portion of its tax based on its federal income tax return.
Facts which have been stipulated are so found. Prior to July 1,1975 plaintiff and its parent, GATC (1975), existed as separate divisions of General American Transportation Corporation (GATC). Plaintiff was then known as the Terminals Division. On July 1,1975, pursuant to a corporate reorganization, plaintiff and GATC (1975) were incorporated, with the result that plaintiff became a wholly-owned subsidiary of GATC (1975). During the year here involved both corporations had several common officers and directors.
Prior to the aforesaid corporate reorganization GATC had issued Equipment Trust Certificates (ETCs) as a means of obtaining funds to operate and expand. It secured them with railroad cars built and owned by it. Approximately one-half of the funds so acquired were assigned to and used by the Terminals Division. These funds were carried as a debt on the intracorporate books maintained by the Terminals Division. After the reorganization GATC (1975) became the owner of the railroad cars and assumed the commercial paper obligations of GATC. GATC (1975) continued the former intracorporate debt relationship between GATC and the Terminals Division by carrying the debt as a loan from GATC (1975) to plaintiff. *94 Subsequent to the corporate reorganization GATC (1975) issued additional ETCs and assigned a portion of the proceeds to plaintiff. These amounts were also carried on the respective records as a loan from the parent, GATC (1975), to plaintiff. Plaintiff paid interest on these loans to its parent, GATC (1975), at the same rate which the parent paid on the ETCs. As of December 31, 1976 the intercorporate debt between GATC (1975) and plaintiff was $59,324,055. Plaintiff’s interest on said amount for that taxable year was $3,383,377. Plaintiff’s 1976 Corporate Business Tax return failed to reflect the $59,324,055 indebtedness as part of the net worth computation. Further, it failed to add back $3,045,040, or 90% of the interest on the intercorporate debt, in computing its adjusted net income for the tax.
Plaintiff introduced the testimony of a certified public accountant to the effect that a transfer of funds from a corporate parent to its subsidiary, in the form of a loan, should be so treated unless there were other factors which would indicate otherwise. The parties have stipulated that the comptroller of GATC (1975) would testify that in structuring the intercorporate debt no consideration was given to its effect on the New Jersey Corporation Business Tax.
The Division of Taxation adjusted plaintiff’s return by adding back to net worth the intercorporate indebtedness and by adding 90% of the interest on said indebtedness to its net income. Plaintiff objects to these adjustments on the following grounds: (1) the. statutory provision which included the indebtedness in plaintiff’s net worth constitutes an irrebuttable presumption which is so unrelated to the legislative purpose of the statute that it violates plaintiff’s constitutional right to due process of law as well as the equal protection guaranteed by U.S. Const., Amend. XIV, § 1; (2) N.J.S.A. 54:10A-A(d) should have been utilized by defendant to make a reasonable determination of the fair value of plaintiff’s assets carried on its books so as to exclude the intercorporate indebtedness from the computation of net worth; (3) defendant erred in failing to recognize that plaintiff’s parent was acting as a financial conduit for the *95 indebtedness and in failing to conclude that the indebtedness was not owed directly or indirectly to the parent, and (4) the repealing clause of L.1982, e. 55, which affected N.J.S.A. 54:10 A-A, should be read as repealing it for the purposes of this case.
The New Jersey Corporation Business Tax Act, N.J.S.A. 54:10A 1 et seq., is a franchise tax exacted by the State of New Jersey from every domestic and foreign corporation. The tax is imposed upon domestic corporations predicated upon the corporate charter being issued by New Jersey, and upon foreign corporations predicated upon their doing business, employing or owning capital or property, or maintaining an office in New Jersey. N.J.S.A. 54:10A 2. It is computed by adding together prescribed percentages of a net worth tax base and a net income tax base. N.J.S.A. 54:10A-4(d), 4(k) and 5.
“Net worth” is defined in N.J.S.A. 54:10A-A(d) as follows:
.. . the aggregate of the values disclosed by the books of the corporation for (1) issued and outstanding capital stock, (2) paid-in or capital surplus, (3) earned surplus and undivided profits, (4) surplus reserves which can reasonably be expected to accrue to holders or owners of equitable shares, not including reasonable valuation reserves, such as reserves for depreciation or obsolescence or depletion, and (5) the amount of all indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayer’s capital stock of all classes as of the close of a calendar or fiscal year.. .. [Emphasis added]
“Entire net income” is defined in N.J.S.A. 54:10A — 4(k) and basically provides that a corporation’s net income is equal to the amount of income, before net operating loss deduction and special deductions, which the corporation is required to report to the United States Treasury Department for the purpose of computing its federal income tax liability, with certain adjustments required by the statute. One of the adjustments is that the corporation take no deduction in computing its net income for
90% of interest on indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayer’s capital stock of all classes ... [NJ.S.A. 10A-4(kX2)(E) ]
The term “indebtedness owing directly or indirectly”
.. . shall include, without limitation thereto, all indebtedness owing to any stockholder or shareholder and to members of his immediate family where a *96 stockholder and members of his immediate family together or in the aggregate own 10% or more of the aggregate outstanding shares of the taxpayer’s capital stock of all classes. [N.J.S.A. 54:10A-4(e)]
Accordingly, a corporation’s “net income” can be reduced by only 10% of the interest on indebtedness to a person or entity which owns 10% or more of the corporation’s capital stock.
The genesis of the 10% shareholder provisions was the report of the Commission on Taxation of Intangible Personal Property (1945), which recommended the enactment of a corporation business tax measured by net worth. This would replace the then existing corporate tax on intangible personal property as well as the capital stock tax. The tax on net worth was intended to provide a more equitable treatment of the corporate taxpayer in New Jersey by removing the inequality and unfairness of the local property tax on intangible personal property as well as the unfairness of the capital stock tax. The report stated that the tax on intangibles was difficult to administer since it had a great number of unrelated exemption provisions and was not equally enforced. Further, the problem with a capital stock tax was that it was basically imposed on the right to exist in corporate form and, since it was measured only by the number of shares issued and outstanding, it was a charge which had no relation to the economic value of the franchise. The Commission recommended a corporate business tax on net worth in a report which stated:
PURPOSE: To provide that—
Every domestic and foreign corporation subject to the taxing jurisdiction of New Jersey (except some at present exempt or others specially taxed), shall pay an annual franchise tax for the privilege of having or exercising its corporate franchise in this State or for the privilege of doing business, employing capital or maintaining an office in this State, [at 62]
That report further stated that net worth
... shall be determined by the actual value of the assets, earnings, and aggregate market value of the corporation’s capital stock, plus the average amount of all indebtedness owing to holders of 10 percent or more of the taxpayer's equity interest or to members of their families, [at 62]
As a result of the above report, the Corporation Business Tax Act, which provided for a tax on the net worth of affected corporations, was enacted.
*97 In 1947 the Commission on State Tax Policy issued its second report. That report contained the following comment with respect to the 10% shareholder provision:
Corporations which are largely or entirely financed by borrowed capital hold assets and conduct business in the same manner as do those financed largely or entirely by equity capital. Deficit corporations exercise the same privilege to do business in New Jersey and they require the same public services as do corporations which have few or no debts.
The Commission finds that the Corporation Business Tax Act should be adjusted to provide a more suitable tax base for corporations holding substantial assets but reporting little or no net worth. While provisions of the act requiring adjustment of net worth to include debts owed to holders of 10 per cent or more of the capital stock provide some correction for discrepancies of this kind, they do not in every instance result in a suitable tax base for corporations operating largely upon borrowed capital.... [at 101]
Plaintiff, in contending that the “irrebuttable presumption” feature of the 10% rule is not rationally related to its legislative purpose, relies on the statement in Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 525-526, 197 A.2d 673 (1964), where the court said that “the statute thwarts ... manipulation or maneuvering by the stockholder to reduce the amount of the tax.” On this premise, plaintiff then argues that the facts in the subject case clearly show that the loan arrangements were not for that purpose and concludes that the application of the 10% rule to it is in violation of its “due process” and “equal protection” constitutional rights.
Plaintiff’s major premise is that the sole legislative purpose of the 10% rule was to thwart manipulation or maneuvering by stockholders to reduce the tax. While that statement was contained in Kingsley v. Hawthorne Fabrics, supra, plaintiff has chosen to ignore the prior portion of the same paragraph which stated:
... In order to effect a proportionately equal tax burden on all corporations, provision was made to include in net worth all indebtedness owing directly or indirectly to a 10% stockholder ... for the reason that in reality such loans or extensions of credit usually are contributions to capital and hence should not be treated as liablilities in calculating the net worth for the purpose of this tax.... [at 525, 197 A.2d 673]
The court cited Werner Machine Co., Inc. v. Zink, 6 N.J.Super. 188, 70 A.2d 774 (App.Div.1950), in support of the above statement. Further, as previously shown, the 1947 Report of the *98 Commission on State Tax Policy, in recommending a minimum tax provision in the Corporate Business Tax Act, pointed out that corporations largely financed by borrowed capital conduct business in the same manner as those financed entirely or largely by equity capital.
While the statement of legislative purpose upon which plaintiff relies is not incorrect, it is obviously not the sole purpose. Rather, the basic purpose of the 10% rule was to tax corporations doing business in New Jersey in a manner which would equitably reach the assets employed in that business. Whether or not the 10% stockholders were attempting to thwart the imposition of the tax is not dispositive. The assets were being used in New Jersey and the legislature chose to define net worth by including loans from stockholders owning 10% or more of a taxpayer’s stock.
Even if it could be held that prevention of manipulation or maneuvering by a stockholder to reduce tax was the sole legislative purpose, the issue is controlled by the principle set out in Skyline Industries v. Taxation Div. Director, 3 N.J.Tax 612 (Tax Ct.1981). In that case the taxpayer argued the nonapplicability of the 10% rule when, at the time the debt was created, the creditor was not a 10% stockholder. In so arguing it also relied upon the same language from Kingsley v. Hawthorne Fabrics, supra. The court stated:
... Although the initiating cause or purpose of legislation may be an aid in statutory interpretation, it does not thereby limit the applicability of that legislation solely to the facts which constituted that cause. Eastern Air Lines v. Civil Aeronautics Bd., 354 F.2d 507 (D.C.Cir.1965); see, also, Cliffside Dyeing Corp. v. Zink, supra [6 N.J.Super. 185, 70 A.2d 778 (App.Div.1950)] (salaries, bonuses and dividends due holders of 10% or more of a corporation’s stock, liabilities which apparently do not represent contributions to capital, constitute indebtedness to be included in the computation of net worth); Werner Machine Co., Inc. v. Zink, supra (accruals of interest have also been deemed to constitute includable indebtedness), [at 620]
The above quotation contains ample authority to show that the 10% rule cannot be limited to those situations where the loans were made to avoid the tax on capital investments.
*99 It is well settled that there is a point beyond which a State may not go without violating the Equal Protection Clause. It “must proceed upon a rational basis and may not resort to a classification which is palpably arbitrary.” Allied Stores of Ohio v. Bowers, 358 U.S. 522, 527, 79 S.Ct. 437, 441, 3 L.Ed.2d 480 (1959). Further, “[i]f the selection or classification is neither capricious nor arbitrary, and rests on some reasonable consideration of difference or policy, there is no denial of equal protection of the law.” Id. at 527-528, 79 S.Ct. at 441. State laws are entitled to a presumption of validity against attack under the Equal Protection Clause. Lockport v. Citizens for Community Action, 430 U.S. 259, 272, 97 S.Ct. 1047, 1055, 51 L.Ed.2d 313 (1977). Further, in determining whether the classification employed by the state bears a rational relationship to a legitimate governmental purpose, it is important to remember that states have been accorded great latitude in the field of taxation. Salorio v. Glaser, 82 N.J. 482, 414 A.2d 943 (1980), cert. den. 449 U.S. 874, 101 S.Ct. 215, 66 L.Ed.2d 94 (1980). Cases applying a stricter standard to states, such as Vlandis v. Kline, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973) (denial of citizenship rights), upon which plaintiff places great reliance, invariably involve situations where basic human liberties are at stake. See Parham v. Hughes, 441 U.S. 347, 351, 99 S.Ct. 1742, 1745, 60 L.Ed.2d 269 (1979).
In its attempt to overcome the presumption in favor of the validity of the 10% rule, plaintiff relies on the testimony of a certified public accountant who stated that, under sound accounting principles, a loan such as the one under consideration should be treated as a loan rather than as part of net worth. In effect, plaintiff wishes to eliminate the 10% rule classification and utilize a subjective test in distinguishing between debt and equity. In so doing it completely missed the point that the subject tax is a franchise tax intended to reach, as much as possible, the capital used by corporations in business in New Jersey. Plaintiff presents no stronger case than that in General Public Loan Corp. v. Taxation Div. Director, 13 N.J. 393, 99 A.2d *100 796 (1953), where the 10% rule was also unsuccessfully attacked as in violation of the Equal Protection Clause.
Plaintiff’s contention that the 10% rule violated its due process rights is primarily predicated on the principles expressed in Vlandis v. Kline, supra, which utilized the Due Process Clause in directing the return of the excessive tuition payments. The due process test to be applied in the subject case is that which was set out in Wisconsin v. J.C. Penney & Co., 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267 (1940). The court there stated:
... that test is whether the property was taken without due process of law, or, if paraphrase we must, whether the taxing power exerted by the state bears fiscal relation to protection, opportunities, and benefits given by the state. The simple but controlling question is whether the state has given anything for which it can ask return. ... [at 444, 61 S.Ct. at 250].
There is here ample justification within the above test to permit New Jersey to impose a franchise tax measured, in part, by the loans from taxpayer’s sole stockholder.
Plaintiff next relies on N.J.S.A. 54:10A-4(d) and N.J.A.C. 18:7-5.10 for the proposition that the Director should, pursuant to the authority given to him, recompute plaintiff’s taxes using “sound accounting principles.” The cited statute and regulation do authorize the Director to make a reasonable determination if the corporation’s books do not disclose fair valuations. However, they clearly do not authorize him to change the measure of the tax as plaintiff contends.
In arguing that plaintiff’s parent was a conduit for the loans and, accordingly, the intercorporate debt should be excluded from net worth, it cites the opinion in Mobay Chemical Co. v. Taxation Div. Director, 3 N.J.Tax 597 (N.J.Tax 1981), aff’d N.J.Super. (App.Div.1982). In Mobay the court relied upon the fact that the conduit was created and utilized for the exclusive purpose of circumventing prohibitions contained in the taxpayer’s prior loan agreements with third parties. The facts in the subject case are not only distinguishable from Mobay but are on all fours with General Public Loan Corp. v. Taxation Div. Director, supra, where the parent made loans of funds which it borrowed from third parties. The Supreme Court rejected the *101 conduit argument because the transaction came squarely within the statutory language and because taxpayer’s argument was, in effect, a contention that the corporate veil should be pierced to permit the taxpayer to gain a tax advantage denied to it by its own voluntary act. The same result is required in the subject case.
The final contention of plaintiff is that the amendments to the Corporation Business Tax Act by L.1982, c. 55, should be read to eliminate the 10% rule for the tax year here involved.
There is no dispute that L.1982, c. 55, did amend the Corporation Business Tax Act. The net worth tax rates were reduced and the tax scheduled for elimination, in a gradual manner, over a four-year period commencing with tax year beginning after April 1, 1983; the minimum tax was reduced, and the 10% indebtedness rule, as applied to net worth, was eliminated. However, the legislation specifically provided for effective dates as follows:
This act shall take effect immediately; provided, however, that the amendment contained in section 1 with respect to subsection (d) of section 4 of P.L. 1945, c. 162 (C. 54:10A 4) relating to indebtedness shall become effective with respect to accounting or privilege periods beginning on or after July 1, 1984 and the amendments contained in section 2 with respect to subsection (e) of section 5 of P.L. 1945, c. 162 (C. 54:10A 5) relating to alternative minimum taxes shall be effective with respect to accounting periods beginning on and after April 1,1983. [L.1982, c. 55, § 3]
Plaintiff argues that since the amendatory legislation was curative or amelioratory, this court should apply it retroactively to 1976, the tax year under review.
The effective date for the elimination of the 10% indebtedness rule is clearly stated to be for the period commencing on or after July 1,1984. The case of Gibbons v. Gibbons, 86 N.J. 515, 432 A.2d 80 (1981), upon which plaintiff relies, is clear support for a view opposite to that expressed by the plaintiff.
In Gibbons, which involved an amendment to the statute providing for equitable distribution of marital assets as a result of a divorce, the question presented was the effect of such amendment on a divorce action which had been instituted and tried, as well as heard in the Appellate Division, before the date of the amendment.
*102 The court, in its discussion of the legal issue, stated that courts of this State have long followed a general rule of statutory construction that favors prospective application of statutes. It further stated:
However, as we have said on at least one. occasion, the rule favoring prospective application of statutes, while “a sound rule of statutory interpretation ... is no more than a rule of statutory interpretation” and is not to be applied mechanistically to every case. Rothman v. Rothman, 65 N.J. 219, 224 [320 A.2d 496] (1974). Thus, there are well-settled rules concerning the circumstances in which statutes should be applied retroactively, where there is no clear expression of intent by the Legislature that the statute is to be prospectively applied only. [Id. at 522; emphasis added]
The Legislature clearly detailed the effective date for the elimination of the 10% rule, as applied to net worth, to be for the tax years beginning on or after July 1, 1984. Accordingly, the amendments had no effect on the subject litigation.
On the basis of the above, defendant will submit a proposed form of judgment pursuant to R.4:42-l, affirming the disputed assessment.