The opinion of the court was delivered by
ANDREW, J.T.C.
In this corporation business tax case plaintiff, Centex Homes of New Jersey, Inc. (hereinafter CNJ), challenges a determination by defendant, Director of the Division of Taxation that the indebtedness of CNJ to CNJ’s great-grandparent, Centex Corporation (hereinafter CC) was to be included as part of CNJ’s net worth tax base in the computation of CNJ’s franchise tax liability for the tax years at issue.
Plaintiff, CNJ, is a Nevada corporation which has been engaged in the acquisition, development and construction of both single-family and multi-family residences in the State of New Jersey since 1970. During the disputed tax years of 1979, 1980 and 1981, CNJ was one of approximately 60 to 65 active corporations that were under the aegis and control of Centex Corporation (CC), also a Nevada corporation. CC was and is a publicly-held corporation whose stock is traded on the New York Stock Exchange. The gross revenues of CC during the tax years were estimated to be “around a billion dollars,” while the gross revenues of plaintiff, CNJ, were approximately five to twenty million dollars.
As the controlling entity, CC exerts overall control and management of the corporate conglomerate through four major holding companies, one in each of the four industries in which it participates. In its home-building industry, CC utilized its wholly-owned subsidiary Centex International, Inc. (hereinafter Cl) as its holding company. In turn, Cl owned the stock of two corporations, one of which was responsible for home-building operations in Texas and a second, Centex Homes Corporation (hereinafter CH), which has the responsibility for home-building operations outside of Texas.
In turn, CH owned all of the stock of five major subsidiaries', one of which was plaintiff CNJ. In sum, during the relevant *477 period, CC owned all of the stock of Cl which owned all of the stock of CH which, in turn, owned all of the stock of plaintiff, CNJ. Thus, in this four-corporation vertical structure which is schematically reflected below, CC is the great-grandparent of plaintiff, CNJ:
[[Image here]]
During the tax years at issue plaintiff, CNJ, borrowed funds directly from its great-grandparent, CC. These interest-bearing advances, evidenced by promissory notes, amounted to $13,323,973 in 1979, $10,432,191 in 1980 and $19,078,795 in 1981. Plaintiff, CNJ, asserts, and defendant does not dispute, that the funds which CNJ borrowed from CC came directly from CC and did not in any way originate with plaintiff-CNJ’s direct parent corporation CH nor with Cl, CH’s direct parent. In plaintiff’s words, “there is no evidence in the record whatsoever which connects the funds at issue to CH [plaintiff-CNJ’s direct parent].”
It was also noted at the trial, during the tax years in issue, that, in addition to the loans that had been made to CNJ by its *478 great-grandparent, CC, plaintiff’s direct parent, CH, had also made loans that averaged approximately $20 million for each of the tax years at issue. In contrast to the loans made by CC to CNJ, the loans by CNJ’s direct parent to CNJ were not normally reflected by promissory notes nor were they interest bearing.
Eventually, the loan transactions between CNJ and its direct parent, CH, became an open working account which permitted plaintiff, CNJ, to borrow from its immediate parent for operating capital as the need arose. The indebtedness of CNJ to its direct parent CH was reported by CNJ as part of CNJ’s net worth for corporation business tax purposes pursuant to N.J. S.A. 54:10A-4(d)(5) (hereinafter § 4(d)(5)) during the tax years at issue.
In its corporation business tax returns for tax years 1979 and 1980 plaintiff, CNJ, did not include its indebtedness to its great-grandparent CC as part of its net worth tax base while, however, for the tax year of 1981 CNJ had included, apparently mistakenly or inadvertently, its indebtedness to CC as part of its net worth tax base.
Following an audit of plaintiff-CNJ’s corporation business tax returns for the tax years in issue, defendant, Director, Division of Taxation, by notice dated March 7, 1986 assessed a deficiency in tax and interest for tax years 1979 and 1980 based on plaintiff-CNJ’s failure to include its indebtedness to its great-grandparent CC in plaintiff’s net worth for corporation business tax purposes.
This determination did not extend to tax year 1981 because, as previously noted, plaintiff CNJ had included its indebtedness to CC as part of its net worth for that year. The Director, however, did make an adjustment, wholly unrelated to the issue of CNJ’s indebtedness to CC, for the 1981 tax year. Plaintiff claims a refund for that year based on its own mistake in including its indebtedness to CC as part of its net worth. The Director maintains, with regard to the 1981 tax year, that, not only was the indebtedness properly included in plaintiff's net worth, but plaintiff’s claim for a refund as to that year is *479 untimely. The record demonstrates that plaintiff filed its 1981 corporation business tax return on January 3, 1983, but did not seek a refund until October 11, 1985, a date clearly beyond the two-year limitations period for refunds set forth in N.J.S.A. 54:49-14.
The contentions of the parties raise three separate issues. First, the Director maintains that plaintiff-CNJ’s indebtedness to its great-grandparent CC was properly includible in CNJ’s net worth tax base because CC was CNJ’s “common parent.” In response, plaintiff CNJ argues that inasmuch as the debts were not owed directly or indirectly to plaintiff-CNJ’s immediate or direct parent CH, but rather to its great-grandparent CC, they did not form part of CNJ’s net worth pursuant to § 4(d)(5).
Second, the Director argues that if the funds at issue are not includible in plaintiff’s net worth pursuant to § 4(d)(5), then they are includible in plaintiff’s net worth because they were, in fact, equity or capital contributions and were improperly characterized as loans by CNJ. Plaintiff’s response to this position is twofold. Plaintiff, first, contends that there is no statutory authority that permits the Director to engage in a factual debt-equity analysis to sustain his position. Second, plaintiff argues that, even if such an analysis were statutorily permitted, it is evident that the indebtedness of plaintiff-CNJ to its great-grandparent, CC, was, in fact, debt.
Third and last, the Director asserts that, even if his position as to the includability of CNJ’s indebtedness to CC is incorrect, GNJ’s refund claim with respect to tax year 1981 must be denied because it was untimely. In this regard, plaintiff contends that its claim for refund was timely. This is based on the fact that the Director had conducted an audit on September 25, 1985 for tax year 1981 and made an adjustment for that tax year. Despite the fact that the adjustment was with regard to an item that was wholly unrelated to the indebtedness at issue, plaintiff contends that the refund claim it filed with the Director less than a month later, on October 11, 1985, was timely.
*480 I.
The New Jersey Corporation Business Tax Act (the act), N.J.S.A. 54:10A-1 et seq., imposes a franchise tax on every nonexempt foreign and domestic corporation for the privilege of having or exercising its corporate franchise in this State, or for the privilege of doing business, employing or owning capital or property, or maintaining an office, in this State. N.J.S.A. 54:10A-2. The tax is measured by adding together prescribed percentages of a net worth tax base and another, not implicated in this case, based on net income. While N.J.S.A. 54:10A-4(d) denotes those items that are to be included in the net worth base, it is § 4(d)(5) [1] which is specifically pertinent to the issues in this proceeding.
“Net worth” shall mean the aggregate of the values disclosed by the books of the corporation for (1) issued and outstanding capital stock, (2) paid-in or capital surplus, (3) earned surplus and undivided profits (4) surplus reserves which can reasonably be expected to accrue to holders or owners of equitable shares, not including reasonable valuation reserves, such as reserves for depreciation or obsolescence or depletion, and (5) the amount of all indebtedness owing directly or indirectly to holders of 10% or more of the aggregate outstanding shares of the taxpayer’s capital stock of all classes, as of the close of a calendar or fiscal year. [N.J.S.A. 54:10A-4(d); emphasis supplied]
“Indebtedness owing directly or indirectly” has been defined in N.J.S.A. 54:10A-4(e) as follows:
“Indebtedness owing directly or indirectly” shall include, without limitation thereto, all indebtedness owing to any stockholder or shareholder and to members of his immediate family where a stockholder and members of his immediate family together or in the aggregate own 10% or more of the aggregate outstanding shares of the taxpayer’s capital stock of all classes.
Additionally, according to defendant’s brief, the Director has been interpreting these statutory provisions on a consistent basis in an expansive or broad manner. This continuous course of construction or policy adopted by the Director is reflected in a regulation that became effective March 2, 1987. This regulation, N.J.A.C. 18:7-4.5(f), insofar as it is relevant to this litigation, provides:
*481 For the purpose of determining the degree of stock ownership of a corporate creditor all the shares of the taxpayer’s capital stock held by all corporations bearing the relationship of parent, subsidiary, or affiliate of the corporate creditor shall be aggregated.
Example 1: L Corporation owns 100 percent of the stock of M Corporation which in turn owns 100 percent of N Corporation. L Corporation made loans or otherwise provided funds directly to N Corporation. The indebtedness from N Corporation to L Corporation is indebtedness owing directly or indirectly to a 10 percent stockholder.
There is no dispute in this ease that the source of plaintiff-CNJ’s indebtedness is not CNJ’s direct parent CH. Instead, the record clearly shows that the source of CNJ’s indebtedness is its great-grandparent CC. CC, however, as plaintiff points out, does not “hold” any of the stock of plaintiff, CNJ. Thus, plaintiff, CNJ, contends that § 4(d)(5) does not apply and CNJ’s indebtedness to CC is not includible in its net worth tax base. On the other hand, the Director, as is reflected in his practice and regulation, has taken the position that the stock held by related corporations may be aggregated, and thus, the indebtedness of CNJ to its great-grandparent CC is indebtedness owing directly to a 10% shareholder and must be included in CNJ’s net worth computation.
In support of this position the Director relies upon: (A) the decisions of our Supreme Court in Fedders Financial Corp. v. Taxation Div. Dir., 96 N.J. 376, 476 A.2d 741 (1984) and its companion, Mobay Chemical Co. v. Taxation Div. Director, 96 N.J. 407, 476 A.2d 758 (1984) which construed § 4(d)(5), (B) the decision of the Supreme Court in Intern. Flavors & Frag. v. Director, Div. of Tax., 102 N.J 210, 507 A.2d 700 (1986) which permitted aggregating a corporate taxpayer’s stock with that of its totally-owned subsidiary in a third corporation, and (C) the Director’s regulation, N.J.A.C. 18:7 — 4.5(f), which merely recites what has been the Director’s practice and policy in his administration of the CBT.
A.
The Director explains that prior to the Fedders decision by our Supreme Court it had been the Division’s consistent posi *482 tion[2] that all indebtedness owed by a taxpayer corporation to any affiliated corporation was to be included in the calculation of the taxpayer’s net worth if the taxpayer and the affiliated corporation were substantially owned or controlled by the same entity.
Fedders involved a three-corporation vertical structure (parent-taxpayer-subsidi&ry) in which the taxpayer, the middle corporation, was indebted, not to its parent corporation, but to its totally-owned subsidiary corporation. Since the parent controlled not only the taxpayer but the taxpayer’s totally-owned subsidiary, the creditor corporation, the Director required, in accordance with his existing policy, that the taxpayer’s indebtedness, not to its parent, but, to its subsidiary be included in the taxpayer’s net worth pursuant to § 4(d)(5). Adopting a test of “nexus and control” the Tax Court agreed with the Director’s conclusion and held that the taxpayer’s indebtedness, while directly owed to its own subsidiary, was indirectly owed to its parent. 3 N.J.Tax 576, 586 (Tax Ct.1981).
In reversing this determination a majority of the Supreme Court focused on the appropriate construction of the *483 statutory phrase “indebtedness owing directly or indirectly” to stockholders holding 10% or more of the taxpayer’s capital stock. 96 N.J. at 388, 476 A.2d 741. The majority rejected any per se rule which would automatically include in a taxpayer’s net worth a loan from an affiliated corporation regardless of whether the loan emanated directly or indirectly from the parent. Id. at 392, 476 A.2d 741. First, the Court distinguished direct and indirect indebtedness and reaffirmed the principle that a debt owed directly to a parent company, regardless of the source of the funds loaned by the parent company, was to be included in the net worth of the subsidiary. Id. at 386-388, 476 A.2d 741. Funds borrowed by a taxpayer corporation from a nonparent affiliated corporation, however, are to be included in the net worth of the taxpayer only if the funds are indirectly owed to the parent of the taxpayer corporation.
Additionally, the Court concluded that there is a presumption that an indebtedness owed by a taxpayer to an affiliated corporation controlled by a common parent is indirectly owed to the parent, but that is not conclusive and the taxpayer may establish that the funds are not indirectly owed to the taxpayer’s parent, and therefore, would not be includible in the taxpayer’s net worth computation. Id. at 389, 476 A. 2d 741.
In Mobcty, the corporate setting was somewhat different and is reflected by the following schematic diagram.
*484 [[Image here]]
The indebtedness at issue in Mobay was owed by Mobay Chemical Corporation to Baychem Funding, both effectively owned and controlled by Bayer A.G., the overall parent of a group of corporations. The Court held, relying on the principles enunciated in Fedders, that the indebtedness was not includible in Mobay Chemical Corporation’s net worth because it was neither directly or indirectly owed to its immediate parent, Rhinechem Corporation, nor was it owed directly or indirectly to its indirect parent, Bayer A.G. 96 N.J. at 412. In a footnote, however, the Court specifically observed that:
No issue has been raised as to whether Bayer A.G.’s indirect or equitable ownership of plaintiff’s stock brings it within the statutory classification as a “[holder] of 10% or more of the aggregate outstanding shares of the taxpayer’s [plaintiff’s] capital stock of all classes,” N.J.S.A. 54:10A-4(d), and we need not pass on the point. [Id. at 412, n. 2, 476 A.2d 758; emphasis supplied]
Thus, the precise issue raised in this case was not specifically considered by the Court. That is, whether the great-grandpar *485 ent CC’s “indirect or equitable” ownership of CNJ’s stock brings it within the statutory classification as a “holder of 10% or more of [CNJ’s] capital stock.” N.J.S.A. 54:10A-4(d)(5); emphasis supplied.
It is uncontroverted that the debt was directly owed to CC, but what is not clear is whether CC can be considered a “holder” of CNJ’s stock pursuant to § 4(d)(5).
The Director, however, recites some of the language from the Mobay opinion to the effect that the Court was influenced in its holding by the fact that Mobay Chemical Corporation “was not directly or indirectly obligated to its indirect parent, Bayer A.G.,” 96 N.J. at 412, 476 A.2d 758, emphasis supplied, and therefore, if the taxpayer had been obligated to its indirect parent the Court would have required the inclusion of the indebtedness in the taxpayer’s net worth. The Director argues that “[i]t is explicit that if the Mobay taxpayer had been obligated to its common parent, the Supreme Court would have upheld the Director’s assessment ... [t]hus Mobay and Fedders support the Division’s position in this case.”
In response, plaintiff CNJ asserts that the Supreme Court specifically required a narrow interpretation of the language used in § 4(d)(5) rather than the expansive construction urged by the Director, and inasmuch as CC is not a legal or direct holder of any of CNJ’s stock, CNJ’s indebtedness to CC is not includible in CNJ’s net worth.
In Fedders the Supreme Court began its interpretive analysis of the phrase, “indebtedness owing directly or indirectly,” in § 4(d)(5) by reviewing some relevant principles of statutory construction. It noted that courts generally “should follow the clear import of statutory language.” Fedders, 96 N.J. at 884-385, 476 A.2d 741. In this regard the Court indicated that the Legislature must express its intention to tax in distinct and unambiguous language. Id. at 386, 476 A.2d 741.
While the Court noted that there has been some dissatisfaction with an interpretive principle enunciated by the United States Supreme Court in 1917, nevertheless, it reaffirmed its *486 viability and quoted approvingly from the opinion in Gould v. Gould, 245 U.S. 151, 153, 38 S.Ct. 53, 53, 62 L.Ed. 211, 213 (1917).
In the interpretation of statutes levying taxes it is the established rule not to extend their provisions, by implication, beyond the clear import of the language used, or to enlarge their operations so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government and in favor of the citizen. [96 N.J. at 385, 476 A.2d 741]
The Court supported its analysis in this regard by reviewing a number of New Jersey cases involving taxing statutes that all reached the conclusion that, absent some ambiguity, a literal reading of the taxing statute is required. Id. at 386-388, 476 A.2d 741.
An application of that principle in this case compels the conclusion that CC was not the “holder” of any of CNJ’s stock, and thus, the indebtedness owing to CC was not includible in CNJ’s net worth pursuant to § 4(d)(5).
The language of § 4(d)(5) specifically refers to “direct or indirect indebtedness” and thus a subjective inquiry may be required to determine the indirect source of the funds. Section 4(d)(5) does not, however, provide for debts owed to “indirect or equitable” holders of the taxpayers capital stock. To attribute stockholding in CNJ to CC requires adding to, or taking liberties with, the statutory language. In light of the fact that Legislature used the phrase “direct or indirect” in its consideration of the source of the funds, it is only reasonable to conclude that had it intended indebtedness to the “direct or indirect” holder of a taxpayer’s stock it would have explicitly so provided.
This conclusion finds additional support in the case of Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 197 A.2d 673 (1964), in which the Supreme Court rejected a regulation of the Director that sought to broadly define the statutory term “immediate family” as it appears in N.J.S.A. 54:10A-4(e) and which permits the aggregation of stock ownership to a stockholder and “members of his immediate family.”
*487 The Director’s definition, as expressed in the regulation, included not only related members of the stockholder’s household but certain related persons such as brothers whether they were members of the stockholder’s household or not. The Director argued that his broad interpretation of “immediate family” was consistent with the underlying purpose of the taxing provision, since deficit financing could be achieved by loans from brothers outside the stockholder’s household as well as by loans from members of the stockholder’s household.
The Court held that, even though the regulation might be in accord with overall policy, it exceeded the reach of the statute because the “[legislative body must express its intention to tax in distinct and unambiguous language.” Id. at 529-580, 197 A.2d 673. A brother living outside the stockholder’s household was not part of the stockholder’s “immediate family.” See also Werner Machine Co., Inc. v. Zink, 6 N.J.Super. 188, 194-195, 70 A.2d 774 (App.Div.1950) (Before an amendment to the indebtedness provision permitting aggregation of stockholding to a stockholder and “members of his immediate family,” the Appellate Division held that the indebtedness provision could not be extended to include loans made by members of a stockholder’s family).
B.
The Director also maintains that the Supreme Court’s decision in International Flavors, supra, supports his conclusion that an aggregation of stockholding under § 4(d)(5) was intended by the Legislature and must be permitted in this case. This position is hardly surprising in light of the fact that the dissenting opinion in International Flavors implies that the decision in Fedders is not totally consistent with the decision in International Flavors. As noted by Justice O’Hern, in dissent, the Court instructed the Director to apply the literal language of the taxing statute in Fedders, but to search for economic reality rather than literalness in International Flavors. Id., 102 N.J. at 210, 507 A.2d 700 (O’Hern, J., dissenting).
*488 In International Flavors the Court was called upon to interpret certain statutory provisions dealing with the net income tax base component of the CBT. Specifically, N.J.S.A. 54:10A-4(k)(l) permitted the exclusion of 100% of the dividends received by a taxpayer corporation from its subsidiary from the taxpayer’s net income tax base provided the taxpayer had “80% or more ownership of investment” in the subsidiary. The phrase “ownership of investment” is described in the statutory section of the CBT dealing with the computation of the net worth tax base, N.J.S.A. 54:10A-4(d), which indicates that it is defined as “ownership ... of at least 80% of the total combined voting power of all classes of stock of the subsidiary.”
Prior to. International Flavors the Director had interpreted the phrases “80% or more ownership of investment” and “80% of the total combined voting power” to require the taxpayer corporation to directly own 80% or more of the subsidiary’s record stock. The Director did not permit indirect or equitable ownership of a subsidiary by a taxpayer corporation through another corporation, which the taxpayer directly owns or controls, to qualify for the 80% ownership test.
The taxpayer in International Flavors owned 30% of one subsidiary and 63% of a second subsidiary. The remaining shares of each subsidiary were owned by a third subsidiary the entire stock of which was owned by the taxpayer. Thus, the taxpayer maintained that, while it did not have direct record ownership, as required by the Director, the economic realities of the corporate world revealed that the taxpayer effectively owned not merely 80% but 100% of the “ownership of investment” of the dividend-paying subsidiaries.
The Court, after considering the specific language used by the Legislature and the legislative history, held that direct record ownership of 80% of the stock of the dividend-paying subsidiaries was not mandated by the language used nor by the history of the enactment. Thus, the Court permitted the taxpayer to “aggregate its ownership of stock in a dividend-paying *489 subsidiary with the stock owned in such subsidiary by its wholly-owned subsidiary.” 102 N.J. at 221, 507 A.2d 700.
The Director contends that inasmuch as the aggregation of stock was permitted in International Flavors which was decided two years after Fedders and Mobay, “it is apparent that the Supreme Court has approved aggregating the stock owned by the parent and common parent of the taxpayer in ... [the] circumstances [of the present case].” In asserting this contention the Director maintains that International Flavors is not confined “to the area of dividends-received-deduction,” but must be looked upon broadly. Thus, in this case, as the argument proceeds, there should be an expansive application of the term “stockholder,” to include plaintiff-CNJ’s, great-grandparent, CC.
A fair reading of the majority opinion in International Flavors does not support the Director’s contention. In answer to the dissent offered by Justice O’Hern, the majority opinion specifically indicated that the International Flavors decision implicated a construction of the phrase “ownership of investment,” and that the language used and the legislative history of that provision permitted the aggregation of stock ownership in that case. There is nothing in the opinion that indicates that the liberal interpretation accorded the statutory words was to be extended to any other provision in the CBT.
Additionally, there is nothing in the International Flavors opinion that suggests that the literal interpretation principle and the Gould principle of statutory construction, relied upon in Fedders, are no longer favored by the Court. Lastly, there are different policy considerations involved in interpreting different sections of the CBT. The Legislature, motivated by these different considerations, may very well choose to require aggregation of stockholdings in one situation and not in another. Thus, if one views the Fedders and International Flavors decisions as not being entirely consistent that may very well be *490 due to differing legislative policies, which the Legislature may legitimately follow[3].
C.
As final support for his position that stock of related corporations may be aggregated, and thus, the indebtedness at issue in this case must be included in plaintiff-CNJ’s net worth, the Director points to, not only the Division’s consistent construction of the taxing statute requiring aggregation, but also, the regulation adopted by the Director, N.J.A.C. 18:7-4.5(f), which is in accord with the practice and policy of the Division.
With regard to the Director’s argument that the Division’s policy and continuous course of practical construction in entitled to due deference, the Court in International Flavors noted that a court must consider an agency’s construction of a statute only when it is satisfied that legislative intent cannot be determined by a critical examination of the purposes, policies and language of the enactment. 102 N.J. at 218, 507 A.2d 700. The Division’s practice, however, cannot go beyond the legislative intent as expressed in the taxing statute. Ibid.
Likewise, the Director’s regulation cannot exceed the legislative intent as expressed in the statute. Fedders, supra, 96 N.J. at 392, 476 A.2d 741. As was observed in Kingsley v. Hawthorne Fabrics, supra, “[a]n administrative agency may not under the guise of interpretation extend a statute to include persons not intended, nor may it give the statute any greater effect than its language allows.” Id., 41 N.J. at 528, 197 A.2d *491 673; see also Fedders, supra, 96 N.J. at 392, 476 A.2d 741. As in Fedders, the Director has established a rule that exceeds the literal language of the taxing statute, and thus, to that extent is ultra vires.

11.

In the alternative, the Director contends that if the funds at issue are not includible in plaintiffs net worth pursuant to § 4(d)(5), then they are includible in plaintiffs net worth because they were, in fact, disguised equity contributions which were improperly characterized as loans by plaintiff.
In contrast, plaintiff asserts that the Director is presenting a basis for the imposition of taxation which has no foundation in the CBT, the decisional law of this State, nor in any regulations, practice or policy of the Division. Additionally, plaintiff argues that, even if a factual debt-equity analysis were statutorily permitted, the debt owed by CNJ to CC was, in fact, debt.
For the reasons hereinafter stated, we have concluded that plaintiffs first argument is correct, i.e., there does not appear to be any authority that permits the Director to engage in a subjective inquiry as to whether a loan is, in fact, a loan or a contribution to capital.[4] In light of this, it is unnecessary to become enmeshed in the factual analysis suggested by the Director.
To begin with, there is nothing in the CBT as a whole, nor specifically in the definition of net worth in N.J.S.A. 54:10A-4(d), that even remotely authorizes the Director to recharacterize a loan as an equity contribution. There is, as noted by plaintiff, a provision in N.J.S.A. 54:10A-4(d) which permits the Director generally to redetermine the value of a corporation’s assets in accordance with sound accounting principles if he *492 finds that the corporation’s books do not disclose fair valuations. This provision, however, which may have the effect of increasing a corporation’s net worth, does not permit the Director to change a liability as reflected on the books of the corporation to a capital contribution.
With respect to the first issue in this case as to the includability of the indebtedness at issue in plaintiff’s net worth pursuant to § 4(d)(5), the Director emphasized the Division’s policy, its practical administration of the CBT and its interpretive regulation in support of his construction of the CBT. The Director argued that the Division’s “continuous course of practical construction and application of a tax statute” is a potent consideration for the court.
Conspicuously absent from the Director’s argument on this issue of a subjective debt-equity inquiry is any reference to the fact that this analysis accords with the long-established practice or policy of the Division. Apparently, the Director’s position in this case on this issue has not been the Division’s practice. It is clear that the Director has not adopted any rule or regulation that is reflective of any Division policy with regard to this issue.
The Director acknowledges that there are no cases decided in this State which support the Division’s authority to recharacterize a liability into a capital contribution, but maintains that “it is certain ... federal concepts should apply.” That certainty, however, asserted by the Director is not expressly set forth in any provision of the CBT. The Director asserts that federal tax concepts are an inherent part of the CBT because the starting point in the calculation of entire net income, N.J.S.A. 54:10A-4(k), under the CBT is income reported for federal income tax purposes. Therefore, this court should adopt and incorporate federal tax principles. There is nothing in the CBT or its history that indicates that the Legislature intended the Director to become enmeshed in the complexities and administrative difficulties of the federal tax laws. See Amerada Hess Corp. v. Div. of Tax, 107 N.J. 307, 321-322, 526 *493 A.2d 1029 (1987) (when the Legislature wanted to incorporate federal tax concepts it did so in clear terms); compare Smith v. Director, Div. of Taxation, 108 N.J. 19, 33, 527 A.2d 843 (1987) (In the Gross Income Tax Act when the Legislature intended to incorporate federal tax concepts, it did so explicitly).
Moreover, although the Director contends that “debt for net worth tax purposes is also defined with reference to the federal tax law,” there is no citation of authority to support the assertion. Our research has not revealed any. While the beginning point for entire net income may be income reported for federal income tax purposes, and arguably federal tax principles could be applicable, the measure of net worth in N.J.S.A. 54:10A-4(d) makes no reference either expressly or by implication to federal tax principles. As a matter of fact, the legislative history of the CBT and the net worth provisions adopted by the Legislature demonstrate just the opposite, i.e., there was no intent to authorize the Division to engage in a subjective factual analysis to recharacterize debt on a corporation’s books as an equity contribution.[5]
This court in GATX Terminals Corp. v. Taxation Div. Director, 5 N.J.Tax 90 (Tax Ct.1982), aff’d o.b. per curiam 7 N.J.Tax 659 (App.Div.1985), certif. den. 102 N.J. 337, 508 A.2d 213 (1985), had the occasion to review the legislative history of the CBT. It was noted that the genesis of the indebtedness-to-the-10%-shareholder provision was the report of the Commission on Taxation of Intangible Personal Property (1945), which recommended enactment of a tax measured by net worth to replace a then existing tax on intangible personal property. 5 N.J. Tax at 96. It was anticipated that a net worth tax would be more equitable to the corporate taxpayer and easier for the Division to administer than the existing corporate tax. Ibid. *494 The commission suggested that net worth include the amount of all indebtedness owed to holders of 10% or more of the taxpayer’s stock, as a special statutory classification, in order to effect an equal tax burden on all corporations whether operating on borrowed or equity capital. Id. at 97; see also Kingsley v. Hawthorne Fabrics, Inc., supra, 41 N.J. at 525-526, 197 A.2d 673.
This statutory classification was designed to avoid the factual inquiry of whether a loan was, in fact, a contribution to capital, and thus, the indebtedness provision conclusively presumed that a corporate indebtedness owed to a 10% stockholder was equity capital. Kingsley, supra at 525, 197 A.2d 673. All of the foregoing demonstrates that the Legislature sought to provide a relatively simple and administratively feasible methodology for measuring the value of the exercise of the corporate privilege in this State.
Lastly, “[the] legislative body must express its intention to tax in distinct and unambiguous language.” Id. at 529-530, 197 A.2d 673; see also Fedders, supra 96 N.J. at 385-388, 476 A.2d 741. The Director has failed to demonstrate an expression of that intention by the Legislature.
III.
The third and last issue in this case focuses on the timeliness of plaintiff-CNJ’s refund claim for tax year 1981. CNJ had included its indebtedness to its great-grandparent CC as part of its net worth for that tax year. CNJ claims a refund based on its mistake in so including that indebtedness as part of its net worth.
It is uncontroverted that CNJ filed its 1981 corporation business tax return and paid its tax on January 3, 1983. It is further undisputed that CNJ’s claim for refund was not filed until October 11,1985. The Director maintains that the claim is untimely because it was not filed “within two years after the payment” of the tax pursuant to N.J.S.A. 54:49-14, and therefore, the claim must be rejected.
*495 In response, CNJ argues that on September 25, 1985 the Director had conducted an audit that required an adjustment to CNJ’s corporation business tax return and thus, CNJ’s refund claim is timely pursuant to N.J.S.A. 54:10A-19.2[6] because it was filed within a month of the Director’s audit adjustment, even though the audit adjustment was with regard to an item that was totally unrelated to the mistake for which CNJ sought the refund.
Plaintiff’s claim in this regard is clearly without substance. At the time that the Director conducted his audit, i.e., September 25, 1985, it was already too late for CNJ to claim a refund for 1981 because it was beyond the two-year refund period permitted under N.J.S.A. 54:49-14, inasmuch as CNJ had paid its tax on January 3, 1983. Thus its refund claim of October 11, 1985 was manifestly untimely. See Bristol-Myers Co. v. Taxation Div. Director, 3 N.J.Tax 451, 457 (Tax Ct.1981), aff’d 9 N.J.Tax 88 (App.Div.1986), certif. den. 107 N.J. 121, 526 A.2d 189 (1987).
Plaintiff’s argument that the audit adjustment of September 25, 1985, while not related to an item specified in its refund claim, did involve the same issue of intercorporate indebtedness with regard to another corporation in the Centex conglomerate, and therefore, the two-year refund period does not apply, is equally without substance.
Plaintiff’s challenge to the Director’s September 25, 1985 audit can only relate to those items changed by the Director. The audit does not reopen plaintiff’s tax return for all purposes and clearly does not extend the two-year refund period for items unaffected by the audit. Ibid.
*496 IV.
In sum, we find that the Director’s deficiency assessment relating to plaintiff-CNJ’s indebtedness to its great-grandparent CC for tax years 1979 and 1980 was inappropriate. The Clerk of the Tax Court is directed to enter a judgment vacating defendant’s assessment as it relates to the indebtedness issue including any related interest for tax years 1979 and 1980. With regard to tax year 1981, defendant’s determination that plaintiff’s refund claim was untimely is affirmed.

The Legislature has repealed subsection (5), L. 1982, c. 55, § 1, effective July 1, 1984, nevertheless, this provision is still relevant here because plaintiffs case involves tax years prior to the statute’s amendment.

This position was reflected in the Director’s regulation, N.J.A.C. 18:7-4.5(d) which provided:
In the case of a creditor, corporate or otherwise (other than an individual), including an estate, trust or other entity, indebtedness, if not includible by reason of direct ownership of taxpayer’s stock by such creditor, shall be includible if both the taxpayer and the creditor are substantially owned or controlled directly or indirectly by the same interests, or where the creditor is controlled directly or indirectly by the same interests, or where the creditor is controlled, directly or indirectly by interests, including members of the immediate family of stockholders, which in the aggregate hold ten percent or more of the taxpayer’s outstanding shares of capital stock of all classes. For the purpose of determining the degree of stock ownership of a corporate creditor, all the shares of the taxpayer's capital stock held by all corporations bearing the relationship of parent, subsidiary or affiliate of the corporate creditor shall be aggregated. [Emphasis supplied]
This regulation was declared ultra vires by the Supreme Court in Fedders, supra, 96 N.J. at 392, 476 A.2d 741. The emphasized language in the rejected regulation, however, has been readopted by the Director as N.J.A.C. 18:7-4.-5(f), supra.

Prior to the decisions of the Supreme Court in Fedders and Mobay on one hand.and International Flavors on the other, it is interesting to note that the Director’s position on the aggregation of stockholding was just as allegedly inconsistent as the decisions of the Supreme Court. Before Fedders, the Director was of the opinion that aggregation of stockholding was permissible and, in fact, mandated in the indebtedness cases. In contrast, before the decision in International Flavors, the Director’s position was that indirect or equitable ownership could not be aggregated with record ownership, i.e., direct record ownership was necessary in the dividend-paying-subsidiary situations.

There is nothing in the record to indicate that the loans at issue were mere sham transactions designed solely to evade corporation business taxes, and therefore, we have not considered the effect of such a factual context. See Coppa v. Taxation Div. Director, 8 N.J.Tax 236 (Tax Ct.1986).

While it is true that pending legislation does not constitute legislative history for an existing enactment, it is interesting to observe that there is a bill pending in the Legislature, Assembly Bill 4238 (1989), which will permit the Director to engage in a subjective debt-equity analysis in certain specified circumstances.

N.J.S.A. 54:10A-19.2 provides as follows:
Any aggrieved taxpayer may, within 90 days after any action of the director made pursuant to the provisions of this act, appeal therefrom to the tax court in accordance with the provisions of the State Tax Uniform Procedure Law, R.S. 54:48-1 ei seq.